OHIO APARTMENT ASSOCIATION ET AL., APPELLANTS AND CROSS-APPELLEES,

*v.* LEVIN, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *Ohio Apt. Assn. v. Levin*, 127 Ohio St.3d 76, 2010-Ohio-4414.]

*Taxation — Real property — Ohio Adm.Code 5703-25-10 and 5703-25-18 — Distinction between residential multifamily dwellings based on number of families dwelling will accommodate does not violate Uniformity Clause of Section 2, Article XII, or Equal Protection Clause of Section 2, Article I, Ohio Constitution.*

(No. 2009-0213 — Submitted May 25, 2010 — Decided September 23, 2010.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 2006-A-861.

_____

**CUPP, J.**

{¶ 1} This matter originated in the Board of Tax Appeals ("BTA") upon an application for rule review pursuant to R.C. 5703.14(C). The rule-review process allows any person who has been or may be injured by any rule adopted and promulgated by the tax commissioner to ask the BTA to determine whether the rule is reasonable.

{¶ 2} The appellants and cross-appellees are Greenwich Apartments, Ltd., and D&S Properties, owners of several multiunit apartment complexes including residential rental properties containing four or more units, and the Ohio Apartment Association, a trade association representing the interests of such owners (collectively "appellants"). Appellants filed an application with the BTA to review Ohio Adm.Code 5703-25-18 and 5703-25-10. These administrative rules incorporate a 2005 amendment to R.C. 319.302, the effect of which is to limit the 10 percent property-tax reduction to real property that is "not intended primarily for use in a business activity." As they affect residential apartments, the

statute and administrative rules distinguish between properties improved with one-, two-, and three-family dwellings and those improved with dwellings for four or more families: the tax reduction is granted to the former but not to the latter. See Ohio Adm.Code 5703-25-18(A)(4); 5703-25-10(B)(5).

{¶ 3}  Appellants claimed that the administrative rules were unreasonable and unconstitutional because their application resulted in disparate treatment of similarly situated property owners based solely on the number of units contained on the property.  The BTA found that the rules were reasonable.  Citing its lack of jurisdiction, the BTA correctly declined to address appellants' constitutional claims.  See *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 231, 520 N.E.2d 188; *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 198, 625 N.E.2d 597.

{¶ 4}  After review, we agree with the BTA's decision that the rules are reasonable.  We further find that appellants have not shown that the rules violate either the Uniformity or the Equal Protection Clause of the Ohio Constitution.  Finally, we find that the tax commissioner's cross-appeal is without merit.

## I.  Relevant Background

{¶ 5}  In 2005, the General Assembly enacted comprehensive tax reform generally designed to lessen the burden of taxation on Ohio's businesses.  See Am.Sub.H.B. No. 66.  For many businesses, the personal property tax and corporate franchise tax were phased out and replaced by the Commercial Activity Tax ("CAT").  See R.C. 5711.22(E) through (G) (phasing out the personal property tax), 5733.01(G)(1) and (2) (phasing out the corporate franchise tax), and 5751.031 (phasing in the CAT).

{¶ 6}  As part of this legislation, R.C. 319.302(A)(1) was amended as follows:

{¶ 7}  "Real property that is not intended primarily for use in a business activity shall qualify for a partial exemption from real property taxation.  For

2

purposes of this partial exemption, 'business activity' includes all uses of real property, except * * * occupying or holding property improved with single-family, two-family, or three-family dwellings; [and] leasing property improved with single-family, two-family, or three-family dwellings * * *."

{¶ 8}  Prior to the amendment, all owners of real property received a 10 percent reduction — or rollback — of their real property tax.  See former R.C. 319.302, Am.Sub.H.B. No. 168, 150 Ohio Laws, Part III, 3456-3457.  As relevant to this appeal, the amendment eliminated the 10 percent rollback for taxpayers who owned real property improved with dwellings for four or more families.  See R.C. 319.302(B) (maintaining the partial exemption at 10 percent).

{¶ 9}  Following the amendment to R.C. 319.302, the tax commissioner promulgated Ohio Adm.Code 5703-25-18 and amended Ohio Adm.Code 5703-25-10.  See R.C. 319.302(C) (authorizing the commissioner to adopt rules governing administration of the partial exemption).  Neither of these administrative rules added anything substantive to R.C. 319.302(A).  The relevant portion of the first rule, Ohio Adm.Code 5703-25-18(A), merely replicated the language of that statutory provision.  Ohio Adm.Code 5703-25-18 also cross-references Ohio Adm.Code 5703-25-10, which was in existence before the passage of Am.Sub.H.B. No. 66.  Ohio Adm.Code 5703-25-10 sets forth real property classifications and land-use codes, and the tax commissioner's 2005 amendment to this rule did nothing to change the classification of "residential" land, defined then and now as land and improvements "used and occupied by one, two, or three families."   Ohio Adm.Code 5703-25-10(B)(5).  Cf. former Ohio Adm.Code 5703-25-10, 2003-2004 Ohio Monthly Record, Part 1, 777, eff. Sept. 18, 2003.[1]

---

1.  The only change to Ohio Adm.Code 5703-25-10 as a result of Am.Sub.S.B. No. 66 was the addition of language and land-use codes to identify certain commercial timbered properties that would not be eligible for the 10 percent rollback.

**{¶ 10}** On July 10, 2006, appellants filed their application for rule review with the BTA. The BTA allowed appellants to amend their application on February 1, 2008. Appellants claimed that Ohio Adm.Code 5703-25-18 and 5703-25-10[2] were unreasonable because they violate the Uniformity and Equal Protection Clauses of the Ohio Constitution. See Section 2 of Article XII and Section 2 of Article I.

**{¶ 11}** The BTA lacked jurisdiction over appellants' constitutional challenges, see *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d at 231, 520 N.E.2d 188, and reviewed the rules only for reasonableness. The BTA found that the rules were reasonable because they did not conflict with the legislative directive to the tax commissioner to promulgate such rules.

**{¶ 12}** Appellants filed a notice of appeal to this court, challenging the BTA's determination that the rules were reasonable and reasserting their constitutional arguments. The tax commissioner filed a cross-appeal, raising several challenges to the BTA's jurisdiction and its rule-review process. The commissioner also filed a motion to dismiss.

## II. Analysis

### A. *The Tax Commissioner's Motion to Dismiss*

**{¶ 13}** On March 30, 2009, the tax commissioner filed a motion to dismiss that raised four jurisdictional grounds for dismissing appellants' appeal. We issued a brief order on July 22, 2009, denying the motion to dismiss. See *Ohio Apt. Assn. v. Levin,* 122 Ohio St.3d 1231, 2009-Ohio-3477, 911 N.E.2d 906. Our decision, however, left unresolved one aspect of that motion.

**{¶ 14}** In the fourth proposition of law of his motion to dismiss, the tax commissioner attacked the sufficiency of appellants' notice of appeal. According

---

2. Appellants challenge Ohio Adm.Code 5703-25-10 only to the extent that it serves as a mechanism by which the commissioner would effect the elimination of the 10 percent rollback for appellants.

to the commissioner, the notice of appeal contains only broad challenges to the constitutionality of the administrative rules and, therefore, fails to satisfy the standard for specifying error in R.C. 5717.04.

{¶ 15} On this issue, we previously held that there was no basis for granting the motion to dismiss because the notice of appeal contained a sufficient specification of appellants' challenge to the Uniformity Clause. *Ohio Apt. Assn.*, 122 Ohio St.3d 1231, 2009-Ohio-3477, 911 N.E.2d 906, ¶ 6. Because the notice of appeal advanced at least one cognizable claim, we declined to address whether the scope of the notice of appeal also encompassed appellants' equal protection claim. Id.

{¶ 16} R.C. 5717.04 mandates that a notice of appeal from the BTA to this court "set forth the decision of the board appealed from and the errors therein complained of." In their notice of appeal, appellants allege that the BTA's decision "violates Article I, Section 2 of the Ohio Constitution, which provides equal protection to Appellants." The tax commissioner asserts that the notice of appeal is jurisdictionally deficient because appellants have failed to precisely state their constitutional challenges pursuant to our decision in *Castle Aviation, Inc. v. Wilkins*, 109 Ohio St.3d 290, 2006-Ohio-2420, 847 N.E.2d 420, ¶ 38-41 (finding that the wording of appellant's constitutional claim was so general that it could be used in almost every use-tax case).[3]

{¶ 17} We find that appellants' notice of appeal sufficiently sets forth their equal protection challenge as required by R.C. 5717.04. In *Castle Aviation*, the notice of appeal said nothing more than that the imposition of the tax violated equal protection. Id. at ¶ 31. In contrast, appellants' notice of appeal in this case

---

3. Although *Castle Aviation* involved R.C. 5717.02, which sets forth procedures for filing a notice of appeal from a final determination of the tax commissioner *to the BTA*, this court has consistently analyzed notices of appeal under R.C. 5717.04 in light of case law construing R.C. 5717.02. See *Lawson Milk Co. v. Bowers* (1961), 171 Ohio St. 418, 14 O.O.2d 217, 171 N.E.2d 495; *Richter Transfer Co. v. Bowers* (1962), 174 Ohio St. 113, 21 O.O.2d 369, 186 N.E.2d 832; and *Deerhake v. Limbach* (1989), 47 Ohio St.3d 44, 546 N.E.2d 1327.

specifically sets forth the administrative rules at issue. Moreover, the administrative rules on their face create a tax classification of different uses of property that is alleged to violate equal protection.

**{¶ 18}** The assignments of error set forth in the notice of appeal define the scope of our revisory jurisdiction over BTA decisions. See *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, ¶ 5. Appellants' assignment of error is not so broad as to encompass every possible equal protection claim. See *Brown v. Levin*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, ¶ 17 (although the notice of appeal may create "jurisdiction over one or more issues that have been sufficiently specified," the BTA "lacks jurisdiction to grant relief from a final determination based on other alleged errors that were not sufficiently specified in the notice of appeal"). Here, appellants argue in their merit brief that the rules discriminate between different types of real property owners based on an arbitrary and unreasonable classification of property, an allegation that is within the scope of the error assigned in the notice of appeal to this court.

**{¶ 19}** In sum, the foregoing circumstances establish the sufficiency of appellants' notice of appeal and, accordingly, our jurisdiction over their equal protection challenge.

### B. The Tax Commissioner's Cross-Appeal

#### 1. First and Second Propositions of Law on Cross-Appeal

**{¶ 20}** The tax commissioner's first three propositions of law are in support of his cross-appeal. The arguments asserted in his first proposition of law are identical to arguments that he raised in the first and second propositions of law of his motion to dismiss. Our disposition of the motion to dismiss in effect disposed of the commissioner's first proposition of law on cross-appeal. See *Ohio Apt. Assn. v. Levin*, 122 Ohio St.3d 1231, 2009-Ohio-3477, 911 N.E.2d 906, ¶ 3 (rejecting argument that a rule-review proceeding before the BTA is quasi-

legislative in character) and ¶ 4 (rejecting argument that appellants may not use the BTA's rule-review proceeding to challenge the constitutionality of a rule or statutory classification).

**{¶ 21}** The commissioner's second proposition of law was also resolved by our disposition of the motion to dismiss. See *Ohio Apt. Assn.*, 122 Ohio St.3d 1231, 2009-Ohio-3477, 911 N.E.2d 906, ¶ 5 (rejecting argument that rules are not ripe for review until a statutory classification has been declared unconstitutional).

### 2. Third Proposition of Law on Cross-Appeal

**{¶ 22}** In the commissioner's third proposition of law, he claims that appellants lack standing to challenge the reasonableness of Ohio Adm.Code 5703-25-18 through the rule-review process in R.C. 5703.14(C) because the actual or potential injury to appellants is caused by the enabling statute and not the rule. The commissioner's reasoning is as follows: Ohio Adm.Code 5703-25-18(A), which withholds the 10 percent rollback from appellants, merely replicates R.C. 319.302(A)(1); thus, even if the rule is deemed unconstitutional, R.C. 319.302 remains intact, and so does the injury to appellants.

**{¶ 23}** Although standing was not raised in the commissioner's motion to dismiss, we find that our decision on that motion forecloses his standing argument. The commissioner's standing claim is premised on his continuing argument – raised in his motion to dismiss and the first two propositions of law of his merit brief – that a rule-review proceeding cannot be used to attack the constitutionality of the underlying statute that authorized the rules under review. But we rejected the argument when we denied the commissioner's motion to dismiss. In essence, we held that appellants' challenges to the administrative rules inherently implicate the rule's conformity with the underlying statute, and to that extent, the statute itself has been placed at issue. *Ohio Apt. Assn.*, 122 Ohio St.3d 1231, 2009-Ohio-3477, 911 N.E.2d 906, ¶ 4 (rejecting argument that appellants may not use the BTA's rule-review proceeding to challenge the

constitutionality of a statutory classification) and ¶ 5 (rejecting argument that a rule-review proceeding is not ripe until a statutory classification has been declared unconstitutional).

{¶ 24} R.C. 5703.14(C) also cuts against the commissioner's standing argument. This provision specifies that an applicant for rule review must be a person "who has been or may be injured by the operation of the rule." The injury requirement ensures that rule review at the BTA involves a genuine case or controversy. And although the commissioner argues that appellants have not demonstrated any injury from Ohio Adm.Code 5703-25-18 independent of R.C. 319.302, he does not dispute or otherwise challenge appellants' contention that they have suffered economic injury from the loss of the 10 percent property-tax rollback.

{¶ 25} We hold that the tax commissioner has not demonstrated that appellants lack standing under R.C. 5703.14(C) to prosecute this matter. Therefore, we reject the commissioner's third proposition of law.

### 3. Conclusion — Cross-Appeal

{¶ 26} Based on the foregoing, we hold that none of the arguments raised on cross-appeal has merit. Accordingly, the tax commissioner's cross-appeal is overruled.

### C. Appellants' Appeal

#### 1. Application of *Galatis* to Appellants' Uniformity-Clause Challenge

{¶ 27} Appellants contend that Ohio Adm.Code 5703-25-18 and 5703-25-10 contravene the requirement of Section 2, Article XII of the Ohio Constitution that all real property be taxed uniformly.

{¶ 28} Appellants' constitutional challenge hinges on their request that we overrule *State ex rel. Swetland v. Kinney* (1980), 62 Ohio St.2d 23, 16 O.O.3d 14,

402 N.E.2d 542.[4]   In *Swetland,* this court upheld the constitutionality of a 2.5 percent real-property-tax exemption that was applicable only to "homesteads." Id. at paragraph one of the syllabus.  In so holding, this court rejected challenges – largely identical to those raised by appellants here – that the provisions authorizing the partial exemption violated the Uniformity Clause of the Ohio Constitution.

{¶ 29} Appellants, apparently conceding that *Swetland* is dispositive of their Uniformity Clause challenge, want us to overturn that decision.  They argue that the majority's decision in *Swetland* "flowed from a series of missteps, which, when examined further and without the backdrop of the specific economic pressures that led to that decision, reveal that the Constitution requires complete uniformity in tax rates."

{¶ 30} In *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, we established a three-part test for overruling precedent. "A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it."  Id. at paragraph one of the syllabus.

{¶ 31} Appellants do not cite *Galatis*.  They do argue that *Swetland* was wrongly decided, echoing *Galatis*'s first requirement.  *Galatis*, however, contains three requirements that must be satisfied, and appellants do not contend that the other two requirements have been met.  Because appellants' Uniformity Clause challenge rests entirely on overruling *Swetland*, we reject this proposition of law based on appellants' failure to address all three prongs of the *Galatis* test.  See

---

4. Throughout their briefs, appellants refer to *Swetland* as "*Park V.*"  But this is a misnomer. *Swetland* is not a progeny of the *Park Investment* line of cases. See *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 25 O.O.2d 432, 195 N.E.2d 908.

*State ex rel. Grimes Aerospace Co., Inc. v. Indus. Comm.*, 112 Ohio St.3d 85, 2006-Ohio-6504, 858 N.E.2d 351, ¶ 6.

### 2. Appellants' Equal Protection Arguments

**{¶ 32}** Appellants contend that Ohio Adm.Code 5703-25-18 and 5703-25-10 violate the Equal Protection Clause of the Ohio Constitution because rules that treat residential rental property that contains four or more units differently than property containing three or fewer units are arbitrary and unreasonable.

**{¶ 33}** "The limitations placed upon governmental action by the federal and state Equal Protection Clauses are essentially the same." *McCrone v. Bank One Corp.,* 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 7. The Equal Protection Clauses require that all similarly situated individuals be treated in a similar manner. Id. at ¶ 6.

**{¶ 34}** A statutory classification that involves neither a suspect class nor a fundamental right, as here, does not violate the Equal Protection Clauses if it bears a rational relationship to a legitimate governmental interest. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181. Under the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 58, and 60, 717 N.E.2d 286. Rather, a taxpayer challenging the constitutionality of a taxation statute bears the burden of negating every conceivable basis that might support the legislation. Id. at 58. See also *Lyons v. Limbach* (1988), 40 Ohio St.3d 92, 94, 532 N.E.2d 106.

**{¶ 35}** The rational-basis standard requires a high degree of judicial deference to legislative enactments. Id. at 93. Moreover, it is well settled that assessment of taxes is fundamentally a legislative responsibility, and "[t]his already deferential standard 'is especially deferential' in the context of classifications arising out of complex taxation law." *Park Corp. v. Brook Park,*

102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 23, quoting *Nordlinger v. Hahn* (1992), 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1.  States have broad leeway in making classifications and drawing lines that in their judgment produce reasonable systems of taxation.  *Nordlinger* at 11.

   *a. Do the rules discriminate between different types of residential property?*

{¶ 36} Appellants first contend that the administrative rules violate equal protection because they discriminate between different types of residential properties. Ohio Adm.Code 5703-25-18(A) provides that real property that is not intended primarily for use in a business activity shall qualify for a partial exemption (10 percent rollback) from real property taxation.  Leasing property improved with one-, two-, and three-family dwellings is specifically defined as not involving a "business activity." It therefore qualifies for the exemption, Ohio Adm.Code 5703-25-18(A)(4), and properties improved with four or more dwellings do not. Appellants argue that this discriminatory treatment of apartment renters is arbitrary because, regardless of the number of units, rental property is "residential."

{¶ 37} Appellants' equal protection arguments contain several flaws. First, though appellants allege that the rules discriminate against apartment renters by applying a higher tax rate, appellants – apartment owners and their trade association – have not shown that they have standing to assert the equal protection rights of renters.  Generally, a litigant must assert its own rights, not the claims of third parties.  See *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 49-50; *N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, ¶ 14.  And while a limited exception exists, *E. Liverpool v. Columbiana Cty. Budget Comm.*, 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, ¶ 22, appellants have not shown that they fall within the exception.  Renters would have an interest in their landlords' tax rate only if the landlords are both willing and able to pass through tax increases and

decreases in the form of higher or lower rent. But David Fisher, general partner of appellant D&S Properties, testified that he was not able to increase rental charges for his properties after those properties became ineligible for the 10 percent rollback.

{¶ 38} Second, appellants have not shown that they are situated similarly to owners of one-, two-, and three-family dwellings. Equal protection requires that similarly situated persons be treated alike, unless a rational basis justifies treating them differently. "But the Equal Protection Clause 'does not require things which are different in fact * * * to be treated in law as though they were the same.' " (Ellipsis sic.) *GTE North, Inc. v. Zaino*, 96 Ohio St.3d 9, 2002-Ohio-2984, 770 N.E.2d 65, ¶ 22, quoting *Tigner v. Texas* (1940), 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124. Thus, a "comparison of only similarly situated entities is integral" to determining whether the administrative rules deprive the appellants of equal protection. *GTE North* at ¶ 22-23.

{¶ 39} Appellants' primary argument in this regard is that all real property subject to classification in this case, whether a single-family home or a 100-unit apartment, is "residential." According to appellants, the administrative rules "unconstitutionally discriminate between different types of residential property" and place "a disproportionate burden on rental properties with four or more units as compared to all other residential property." Appellants, however, have placed undue emphasis on the differing treatment of property. The Equal Protection Clause protects people, not property. See *Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 19, quoting *Nordlinger*, 505 U.S. at 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (the Equal Protection Clause prevents government " 'from treating differently *persons* who are in all relevant respects alike' "). (Emphasis added.) Because the Equal Protection Clause protects people, the proper analysis focuses on the classification of property owners.

**{¶ 40}** To the extent that appellants' claim relates to classification of property owners, we rejected a virtually identical argument in *Roosevelt Properties Co. v. Kinney* (1984), 12 Ohio St.3d 7, 12 OBR 6, 465 N.E.2d 421, a case involving a rule-review appeal nearly identical to this case. The *Roosevelt* appellants, owners of multiunit apartment complexes and smaller rental properties, challenged an administrative rule adopted by the tax commissioner that governed the calculation of tax-reduction factors under Section 2a, Article XII of the Ohio Constitution. The tax-reduction factors in *Roosevelt* were designed to reduce the effect of inflation on the tax liability of residential- and agricultural-property owners, and were available only to those owners. Under the administrative rule in *Roosevelt*, residential property was defined as a dwelling consisting of four or fewer units. Id. at 8.[5]

**{¶ 41}** The *Roosevelt* appellants asserted that the administrative rule violated equal protection because the rule excluded rental properties consisting of five and more units from the benefit of the tax-reduction factors. Appellants argued that the classification should be predicated on the tenant's use of the property instead of the owner's use. Id. at 10. We rejected that argument, finding that the apartment complexes at issue were not residential but were, instead, "singularly commercial in nature" because "[s]uch properties are accompanied by commercial expectations not otherwise associated with properties occupied by 'homeowners.' " Id. at 12.

**{¶ 42}** In this case, appellants' argument that the rules discriminate "between persons who choose to live in an apartment building and those who live in a single-family home" is predicated upon its assertion that the property should be classified based on the tenant's use of the property instead of the owner's use,

---

5. Before the administrative rule was enacted, the tax-reduction factor was applied to residential property consisting of three units or fewer. See *Roosevelt Properties v. Kinney* (1984), 12 Ohio St.3d 7, 10, 12 OBR 6, 465 N.E.2d 421.

the same argument rejected in *Roosevelt*. Like the appellants in *Roosevelt*, the apartment owners in this case have failed to demonstrate that their properties are not primarily used for business or commercial purposes.

{¶ 43} On this issue, appellants' evidence consists of only two references to the statutory transcript. First, they cite testimony that equates owning residential rental property to owning a home because both share similar maintenance issues such as "carpeting, furnaces, air conditioners, roof, [and] lawn maintenance." But on cross-examination, this witness testified that owners of residential rental properties qualify for tax deductions for expenses associated with maintenance and repairs that are not available to homeowners.

{¶ 44} Second, appellants refer to testimony stating that a "renter can be anybody. It can be [the witness]. It can be the hearing officer, the court reporter, anybody. In many instances, a residential renter resident has made a lifestyle choice to rent." It is not clear to us, however, how this demonstrates that appellants' rental properties are not primarily used in a business or commercial activity.

{¶ 45} The burden is on appellants to show that they are situated similarly to persons receiving the 10 percent tax reduction. Yet appellants have failed to show that owners of single-family homes, duplexes, and triplexes are situated similarly to owners of property containing four or more dwellings. Likewise, even assuming appellants have standing to assert the claim, appellants have not shown that apartment renters and single-family homeowners are similarly situated.

{¶ 46} Appellants attempt to distinguish *Roosevelt Properties*. According to appellants, the "critical distinguishing factor" is that the residential classification upheld by *Roosevelt* was authorized by a constitutional amendment that is limited in application to the tax-reduction factor.

14

{¶ 47} Once again, the import of appellants' argument is not clear. To the extent that appellants are claiming that the constitutional amendment in *Roosevelt* was dispositive of the equal protection question, that claim is without merit. The equal protection claim in *Roosevelt* failed not because of a constitutional amendment, but because the appellants failed to demonstrate that no reasonable basis existed for the residential classification at issue in that case. See *Roosevelt*, 12 Ohio St.3d at 13, 12 OBR 6, 465 N.E.2d 421.

*b. Do the rules discriminate between residential rental properties?*

{¶ 48} Appellants also contend that the administrative rules violate the Equal Protection Clause because rental properties containing three units receive the 10 percent rollback but four-unit rental properties do not. According to appellants, this distinction by number of units is illusory, and there is no evidence of any other reasonable basis for distinguishing between rental properties.

{¶ 49} We rejected exactly this argument in *Roosevelt Properties*. 12 Ohio St.3d at 13-15, 12 OBR 6, 465 N.E.2d 421. In analyzing the reasonableness of a classification that distinguished between four-unit properties and five-unit properties, we were persuaded by *Hegenes v. State* (Minn.1983), 328 N.W.2d 719. At issue in *Hegenes* was a state statute that created two tax classifications for residential rental property: residential rental property containing three or fewer units was taxed at a lower rate than rental property containing four or more units. Id. at 720. The *Hegenes* court found that when it comes to drawing legal classifications under the rational-basis standard, the line drawn need not be perfect for constitutional purposes. " 'When a legal distinction is determined, as no one doubts that it may be, * * * a point has to be fixed or a line has to be drawn * * * to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of

fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark.' " *Hegenes*, at 722, quoting Justice Holmes's dissent in *Louisville Gas & Elec. Co. v. Coleman* (1928), 277 U.S. 32, 41, 48 S.Ct. 423, 72 L.Ed. 770.

{¶ 50} *Hegenes* observed that genuine distinctions exist between small rental properties and large multiunit apartment complexes. Moreover, the *Hegenes* court rejected the contention — the same contention raised by appellants here — that the classification became arbitrary and unreasonable for equal protection purposes solely because the differences between small and larger rental properties diminish when comparing triplexes to four-unit properties. *Hegenes*, at 722.

{¶ 51} In *Roosevelt Properties*, we agreed with the line of reasoning in *Hegenes*: the fact that these differences diminish when comparing four-unit properties to five-unit properties becomes a question of legislative line drawing. We held that "since the Equal Protection Clause does not impose an 'iron rule of equality,' " the line drawn between four- and five-unit properties was reasonable. *Roosevelt Properties*, 12 Ohio St.3d at 15, 12 OBR 6, 465 N.E.2d 421, quoting *Allied Stores of Ohio, Inc. v. Bowers* (1959), 358 U.S. 522, 526, 79 S.Ct. 437, 3 L.Ed.2d 480. These same principles are directly applicable to this case.

{¶ 52} As to appellants' claim that no evidence exists of any relevant distinction between three- and four-unit rental properties, that claim overlooks the following evidence. Testimony before the BTA indicated that the line was drawn between three- and four-unit properties because properties with three or fewer units were more characteristic of residential property, and properties with four or more units more closely resembled commercial property. Other testimony reflected that from 1993 to 2007, single-family homes, duplexes, and triplexes appreciated in value at very similar rates. In contrast, the rate of appreciation for rental properties of four or more units was 25 to 30 percent less over the same

period. And property that is classified as residential continues to appreciate at a higher rate than commercial property, thereby justifying the different tax treatment.

{¶ 53} In response, appellants quote testimony that "[t]he scope [of the two categories of rental properties] may be different based on the size of the business entity that owns the residential rental property, but it is still residential rental property." Appellants also claim that there are no differences between people who rent units in large complexes and those who rent in smaller properties. But these claims merely rehash appellants' argument that all rental property is "residential."

{¶ 54} Appellants further contend that three-unit owners and four-unit owners (1) have the same responsibilities (e.g., maintenance and "peaceful enjoyment"), (2) are treated the same for tax purposes, and (3) may own rental properties of both sizes. But this evidence does not rebut the tax commissioner's evidence that properties with four or more units (1) are generally more commercial in nature and (2) appreciate at a lower rate than single-family homes, duplexes, and triplexes.

{¶ 55} Our job is simply to determine, with great deference, whether there is a rational basis for the General Assembly's taxation decisions. See *Park Corp. v. Brook Park,* 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 36. We find that providing tax relief to property owners whose property values are increasing at a higher rate than appellants' properties constitutes a rational basis for the different classifications. As appellants have failed to negate that basis, their claim here is denied.

### III. Conclusion

{¶ 56} We have held that enactments of the General Assembly are constitutional unless they are clearly unconstitutional beyond a reasonable doubt. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128

N.E.2d 59, paragraph one of the syllabus. Accord *Cincinnati City School Dist. Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 376, 12 O.O.3d 327, 390 N.E.2d 813. This principle applies equally to administrative regulations. See *Roosevelt Properties*, 12 Ohio St.3d at 13, 12 OBR 6, 465 N.E.2d 421.

{¶ 57} Appellants have failed to meet their burden of proving that the administrative rules violate the Ohio Equal Protection Clause beyond a reasonable doubt. As to appellants' assertion that the rules violate the Uniformity Clause of the Ohio Constitution, that claim is rejected on appellants' failure to satisfy the test set forth in *Galatis* for overruling our precedents.

{¶ 58} Accordingly, appellants' appeal is rejected and we affirm the decision of the BTA.

Decision affirmed and

cross-appeal overruled.

BROWN, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 59} Section 2, Article XII of the Ohio Constitution states that "[l]and and improvements thereon shall be taxed by uniform rule according to value * * *." The tax in this case is not uniform, because a 10 percent rollback provision applies to apartment buildings with three or fewer units but does not apply to apartment buildings with four or more units. See *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, 25 O.O.2d 432, 195 N.E.2d 908 ("It is clear that under the Ohio law all real property, regardless of its nature or use, may be assessed and taxed only by a uniform rule on the basis of value"). I would reverse the decision of the Board of Tax Appeals. I dissent.

_____

Calfee, Halter & Griswold, L.L.P., Mark I. Wallach, James F. Lang, and Laura C. McBride, for appellants and cross-appellees.

Richard Cordray, Attorney General, and Lawrence D. Pratt and Alan Schwepe, Assistant Attorneys General, for appellee and cross-appellant.

_____