[Cite as *Sherrard v. Oberlin*, 2011-Ohio-2325.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| JEAN SHERRARD, et al. | | C.A. No. 10CA009817 |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| OBERLIN, et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | | CASE No. 06CV146922 |

DECISION AND JOURNAL ENTRY

Dated: May 16, 2011

WHITMORE, Judge.

{¶1} Plaintiff-Appellants, Jean Sherrard and Robert Denslow (collectively, "the Buyers"), appeal from the judgment of the Lorain County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellees, the City of Oberlin, Marshall Whitehead, Robert DiSpirito, and Eschtruth Wrecking & Excavating ("Eschtruth"). This Court affirms.

I

{¶2} This appeal stems from a demolition that took place at 285 Lincoln Street in Oberlin. Bank One, National Association ("Bank One"), as trustee for Homecomings Financial Network ("Homecomings Financial"), obtained the Lincoln Street property through foreclosure proceedings after its owners defaulted. A foreclosure sale took place in late 2003, and Bank One recorded a sheriff's deed for the property. In early 2004, a fire broke out at the property and damaged the existing structure. Because of the dilapidated condition of the property, Oberlin instituted condemnation proceedings. Whitehead, Oberlin's Code Administrator, issued a

condemnation notice on May 6, 2004. He later issued a demolition order on June 11, 2004. Whitehead sent both the condemnation notice and demolition order to Homecomings Financial.

{¶3} On May 26, 2004, the Buyers signed an offer to purchase the Lincoln Street property in which they acknowledged that Oberlin had condemned the property and was "requiring demolition." Moreover, an addendum to the Buyers' sales contract provided that if demolition occurred before closing, the Buyers could renegotiate or terminate the sales contract. Bank One, as Trustee for Homecomings Financial, signed the sales contract on June 1, 2004, thereby agreeing to sell the Lincoln Street property to the Buyers for $8,000. The closing concluded on June 14, 2004, and the Buyers' deed was recorded the same day.

{¶4} Meanwhile, Oberlin proceeded with the demolition. On July 13, 2004, Eschtruth entered into an independent contractor agreement with Oberlin and agreed to demolish all of the structures on the Lincoln Street property for $7,500. The demolition took place on July 17, 18, and 19, 2004. Rather than rebuild on the property, the Buyers eventually sold the empty lot for $19,000.

{¶5} On July 14, 2006, the Buyers brought suit against Oberlin, Whitehead, DiSpirito, and Eschtruth, claiming that the wrongful demolition of their property amounted to a due process violation and a taking under 42 U.S.C. § 1983. Oberlin, Whitehead, and DiSpirito filed an answer on August 28, 2006, in which they asserted a cross-claim against Eschtruth for contribution and/or indemnification in the event the trial court found them liable for wrongful demolition. Additionally, Oberlin filed a counterclaim against the Buyers for the cost of the demolition that took place on their property. On September 15, 2006, Eschtruth answered the Buyers' complaint and filed its own cross-claim for contribution and/or indemnification against Oberlin, Whitehead, and DiSpirito.

{¶6} After an extensive discovery period, Eschtruth filed a motion for summary judgment on August 31, 2007. Oberlin, Whitehead, and DiSpirito also filed their own motion for summary judgment as to the Buyers' claims against them. The Buyers filed a brief in opposition to both motions. On June 20, 2008, the trial court entered summary judgment in favor of Oberlin, Whitehead, DiSpirito, and Eschtruth. The Buyers appealed from the trial court's ruling, but this Court dismissed the appeal because the trial court failed to rule on Oberlin, Whitehead, and DiSpirito's counterclaim against the Buyers. *Sherrard, et al. v. Oberlin, et al.* (Oct. 28, 2008), 9th Dist. No. 08CA009430.

{¶7} After this Court's dismissal, Oberlin filed a motion for summary judgment on its counterclaim. The Buyers responded in opposition on February 5, 2010. On April 20, 2010, the trial court granted summary judgment in Oberlin's favor in the amount of $7,500, plus interest.

{¶8} The Buyers now appeal from the trial court's judgment and raise four assignments of error for our review. For ease of analysis, we consolidate several of the assignments of error.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT ON THE COMPLAINT IN FAVOR OF THE CITY OF OBERLIN, WHERE THE EVIDENCE ESTABLISHED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AND THE CITY OF OBERLIN WAS NOT NTITLED (sic) TO JUDGMENT AS A MATTER OF LAW."

Assignment of Error Number Two

"THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT ON THE COMPLAINT IN FAVOR OF CITY OF OBERLIN EMPLOYEES ROBERT DISPIRITO AND MARSHALL WHITEHEAD, WHERE THE EVIDENCE ESTABLISHED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AND NEITHER ROBERT DISPIRITO NOR MARSHALL WHITEHEAD WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW."

Assignment of Error Number Three

"THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT ON THE COMPLAINT IN FAVOR OF ESCHTRUTH WRECKING, WHERE THE EVIDENCE ESTABLISHED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AND ESCHTRUTH WRECKING WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW."

{¶9}    In the foregoing assignments of error, the Buyers argue that the trial court erred by entering summary judgment in favor of Oberlin, Whitehead, DiSpirito, and Eschtruth. Specifically, the Buyers argue that genuine issues of material fact remain as to whether they were: (1) properly served with notice of the demolition; and (2) denied equal protection of the law because the Lincoln Street property was subject to a shorter rehabilitation period than other properties in the Oberlin area typically receive when Oberlin issues a condemnation notice. We disagree.

{¶10}  This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. Pursuant to Civ.R. 56(C), summary judgment is proper if:

> "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden

of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735.

{¶11} Initially, we note that the parties relied upon non-Civ.R. 56(C) materials in support of their respective summary judgment filings. "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)." *Skidmore & Assoc. Co., L.P.A. v. Southerland* (1993), 89 Ohio App.3d 177, 179. Not all of the non-Civ.R. 56(C) evidence at issue here was incorporated by reference through an affidavit. Because neither party objected to the use of the evidence, however, it was within the trial court's discretion to consider it. *Wolford v. Sanchez*, 9th Dist. No. 05CA008674, 2005-Ohio-6992, at ¶20, quoting *Christe v. GMS Mgt. Co., Inc.* (1997), 124 Ohio App.3d 84, 90 ("[I]f the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its sound discretion, consider those materials in ruling on the summary judgment motion.").

{¶12} The Buyers' claims against Oberlin, Whitehead, DiSpirito, and Eschtruth all depended upon the Buyers not having received proper notice of the demolition and their property having been trespassed upon and wrongfully destroyed as a result. In support of their motion for summary judgment as to the Buyers' claims, Oberlin, Whitehead, and DiSpirito argued that they were not obligated to serve the Buyers under BOCA National Property Maintenance Code ("PMC") Section 107.5 and, in any event, that the Buyers had actual knowledge of the condemnation/demolition and failed to take action to prevent it. This Court has recognized that actual knowledge of condemnation and demolition proceedings can defeat a property owner's

claim that notices of those proceedings were never properly served.  See, e.g., *McMaster v. Akron Health Dept., Housing Div.*, 9th Dist. No. 25054, 2010-Ohio-3851, at ¶15-17; *Thrower v. Akron*, 9th Dist. No. 21153, 2003-Ohio-1307, at ¶26.

{¶13}  Oberlin, Whitehead, and DiSpirito attached the following, relevant items to their summary judgment motion: (1) an offer to purchase signed by the Buyers on May 26, 2004, containing the statement "Buyer is aware property is condemned and the city is requiring demolition"; (2) a purchase offer addendum, signed on May 31, 2004, providing that the "[p]roperty is being sold to [the Buyers] with the intention that they will re-hab the property and bring it up to local codes.  In the event that the property is demolished prior to closing, buyer's [(sic)] have the right to re-negotiate or terminate this contract"; (3) escrow documents and closing instructions, setting forth a June 14, 2004 closing date on the property; (4) a HUD settlement statement, signed by the Buyers on June 14, 2004; (5) a deed recorded on June 14, 2004, transferring the property from Bank One c/o Homecomings Financial to the Buyers; (6) an affidavit from Whitehead, indicating that a condemnation notice was issued May 6, 2004, a demolition order was issued June 11, 2004, and neither determination was appealed; (7) copies of the condemnation notice and demolition order sent to Homecomings Financial; and (8) an affidavit from DiSpirito, Oberlin's former City Manager, indicating that he never spoke with the Buyers about the property.  Additionally, Oberlin, Whitehead, and DiSpirito relied upon Sherrard's deposition testimony.

{¶14}  In her deposition, Sherrard could not recall when the Buyers' escrow began, when it concluded, when the Buyers received their deed, or whether she had any conversations with Whitehead or DiSpirito about the condemnation or demolition, apart from the one conversation with Whitehead described below.  Sherrard admitted that the Buyers had notice of the

condemnation notice before the closing completed, but she could not recall the date upon which the closing occurred. She insisted, however, that the closing occurred "several weeks earlier" than June 14, 2004 because that was the day she met with Whitehead. Sherrard testified that on June 14, 2004 she went to Whitehead's office and tried to obtain a permit to rehabilitate the property. According to Sherrard, Whitehead refused to issue a permit because "[the] house [was] going to be torn down[.]" Sherrard did not remember anything Whitehead said after that because she was "fairly angry." Sherrard stated in her deposition that she thought a rehabilitation permit "should" stop a condemnation proceeding, but admitted that she did not actually know if it did.

{¶15} There is no dispute that, at the time Whitehead issued the May 6, 2004 condemnation notice on the Lincoln Street property, Bank One, as trustee for Homecomings Financial, still owned the property. The condemnation notice informed Homecomings Financial that Oberlin was declaring the property a public nuisance. It further declared that if Homecomings Financial failed to bring the property into compliance within thirty days (by June 7, 2004) the result would be an order of demolition and that Homecomings Financial had the right to request an appeal hearing. Importantly, the notice also contained a statement from Whitehead that he included a copy of PMC 107.5 "relevant to the transfer of ownership." PMC 107.5 provides, in relevant part, as follows:

> "Transfer of ownership: It shall be unlawful for the *owner* of any *dwelling unit* or structure who has received a compliance order or upon whom a notice of violation has been served to sell \*\*\* to another until the provisions of the compliance order or notice of violation have been complied with, *or until such owner shall first furnish the grantee* \*\*\* a true copy of any compliance order or notice of violation \*\*\* *and shall furnish to the code official* a signed and notarized statement from the grantee \*\*\* acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation." (Emphasis in original and added.)

Whitehead testified in his deposition that he never received a PMC 107.5 statement with regard to the Lincoln Street property. He also attested, by way of affidavit, to the fact that no one appealed from Oberlin's condemnation and demolition determinations.

{¶16} "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the [S]tate seeks to infringe a protected liberty or property interest." *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 459. "It is fundamental that a due process violation does not occur if notice and an opportunity to be heard are given." *Thrower* at ¶26. With regard to condemnation proceedings, this Court has held that actual notice of condemnation will defeat a due process claim alleging defective service of the notice. Id. at ¶24-26.

{¶17} Oberlin, Whitehead, and DiSpirito presented evidence that Whitehead served the condemnation notice at issue here upon Homecomings Financial, that Bank One, as trustee for Homecomings Financial, never appealed from the condemnation notice, and that the Buyers had actual knowledge of the condemnation before closing on the property. The Buyers specifically acknowledged in their purchase offer that the property was condemned and that Oberlin was "requiring demolition." An addendum to their sales contract also provided for termination or renegotiation in the event the demolition took place before the closing occurred. Thus, the record supports the conclusion that the Buyers were aware of the condemnation and the fact that a demolition was imminent. Even so, all of the documentary evidence in the record indicates that the closing took place on June 14, 2004, nine days after the rehabilitation period on the condemnation order expired (June 7, 2004) and three days after the demolition order's issuance. Sherrard testified in her deposition that June 14, 2004 was the only time she spoke with Whitehead about the property. On that day, Whitehead told Sherrard that the property was going

to be demolished. The Buyers did not take any action to prevent the demolition, which then commenced on July 17, 2004.

{¶18} Based on our review of the record, we conclude that Oberlin, Whitehead, and DiSpirito met their initial *Dresher* burden by setting forth evidence that the Buyers purchased the Lincoln Street property with actual knowledge of the condemnation and demolition proceedings. The evidence they presented in support of their motion shows that Whitehead did not serve the Buyers with copies of the condemnation and demolition determinations because the Buyers were not the titled owners of the property at the time those determinations were made. The Buyers did not even close on the property until after the issuance of both the condemnation notice and demolition order. Moreover, Whitehead indicated that he never received a PMC 107.5 statement evincing the transfer of ownership on the property. As such, Oberlin, Whitehead, and DiSpirito satisfied their initial burden, and the burden shifted to the Buyers to show that a genuine issue of material fact existed for trial. *Dresher*, 75 Ohio St.3d at 293.

{¶19} The Buyers argue that a genuine issue of material fact remains as to whether a due process violation occurred because Whitehead, despite having actual knowledge that the Buyers were the owners of the property before the demolition order issued, never served them with the order. In support of their brief in opposition to summary judgment, the Buyers relied upon Whitehead's deposition. According to the Buyers, Whitehead admitted in his deposition that the Buyers came to his office before the demolition order issued, that they told him they bought the property, and that he refused to issue them a rehabilitation permit. What Whitehead actually stated in his deposition, however, was that: (1) he could not recall the date that the Buyers came to his office; and (2) the Buyers only ever indicated to him that they "wanted to purchase" the property. In her own deposition, Sherrard admitted that she could not recall when the closing

occurred and only recalled that she met with Whitehead on June 14, 2004. The Buyers did not point to any evidence to rebut the conclusion that the closing did not occur until June 14, 2004 and that Oberlin was never issued a statement evincing a transfer of ownership, pursuant to PMC 107.5. They also failed to rebut the conclusion that they had actual knowledge of the condemnation and demolition proceedings before they closed on the property and well before the demolition actually began on July 17, 2004. Thus, the Buyers failed to meet their reciprocal burden.

{¶20} The trial court did not err by concluding that Oberlin, Whitehead, and DiSpirito were entitled to summary judgment as to the Buyers' due process claims against them. Moreover, because the Buyers' claim against Eschtruth depended upon their prevailing against Oberlin, the trial court also did not err by granting summary judgment in Eschtruth's favor. The Buyers' argument that Oberlin, Whitehead, DiSpirito, and Eschtruth were not entitled to summary judgment on the foregoing claims lacks merit.

{¶21} The Buyers also brought suit against Oberlin, Whitehead, and DiSpirito to allege an equal protection violation. Specifically, the Buyers argued that the Lincoln Street property was subject to a shorter rehabilitation period than other properties in the Oberlin area typically receive when Oberlin issues a condemnation notice. Yet, "[t]he Equal Protection Clause protects people, not property." *Ohio Apt. Assn. v. Levin*, 127 Ohio St.3d 76, 2010-Ohio-4414, at ¶39. The evidence presented below demonstrated that the Buyers did not close on the Lincoln Street property until after the rehabilitation period expired. The Buyers were not personally subject to any rehabilitation period because they were not the owners of the property at that time. They cannot now assert a claim based on the length of the rehabilitation period that Bank One, as trustee for Homecomings Financial, received. See *N. Canton v. Canton*, 114 Ohio St.3d 253,

2007-Ohio-4005, at ¶14 ("Generally, a litigant must assert its own rights, not the claims of third parties.").

**{¶22}** After a careful review of the record, we cannot conclude that the trial court erred by granting summary judgment in favor of Oberlin, Whitehead, DiSpirito, and Eschtruth with regard to the Buyers' claims against them. As such, the Buyers' first, second, and third assignments of error are overruled.

Assignment of Error Number Four

> "THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT ON THE COUNTERCLAIM IN FAVOR OF THE CITY OF OBERLIN, WHERE THE EVIDENCE ESTABLISHED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AND THE CITY OF OBERLIN WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW."

**{¶23}** In their fourth assignment of error, the Buyers argue that the trial court erred by granting Oberlin's motion for summary judgment on Oberlin's counterclaim against the Buyers for recoupment of the demolition costs. Specifically, the Buyers argue that Oberlin cannot collect demolition costs from them because Oberlin wrongfully demolished their property and never served them with notice of the demolition. We disagree.

**{¶24}** As set forth above, Oberlin demonstrated that the Buyers did not set forth a valid claim for wrongful demolition and that the Buyers purchased the property with actual knowledge that it was condemned and Oberlin was "requiring demolition." The Buyers insist, however, that if they were not the record owners of the property for purposes of being served with the demolition order, then they cannot be considered "owners" for recoupment purposes. The Buyers rely upon *Springfield v. O'Sesco, Inc.* (Dec. 28, 1994), 2d Dist. No. 94-CA-45, and R.C. 715.26 in support of their argument.

{¶25} R.C. 715.26 allows municipal corporations to remove unsafe or otherwise defective structures after issuing a notice to the property's "owners of record" at least thirty days before the removal. R.C. 715.26(B). After the removal occurs, the municipal corporation then may collect the costs expended removing the structures. R.C. 715.261. Specifically, the municipal corporation may place a lien upon the property or may "commence a civil action to recover the total costs from the owner." R.C. 715.261(B)(2). Oberlin opted for the latter option and sought its recoupment costs from the Buyers because they were the owners of record at the time the demolition occurred. The Buyers countered that they were not liable for the demolition costs because they were never notified of the demolition as owners of record. See *O'Sesco, Inc.*, at *3 ("[Because a] municipal corporation is only required to notify the owner of record that a structure is slated for demolition, a consistent reading of R.C. 715.261 would only allow a municipal corporation to recover the total costs of the demolition from the owner of record.").

{¶26} To the extent the Buyers relied upon *O'Sesco, Inc.* to withstand summary judgment on Oberlin's counterclaim, that case is distinguishable from the case at hand. *O'Sesco, Inc.* did not involve an instance where an owner of record sold his property after a demolition order issued. The case simply held that a city could not recoup demolition costs from an individual when he had owned the razed structure solely in his corporate capacity. Id., at *1-3. Rather, the city had to collect the costs from the corporate entity; the owner of record. Id.

{¶27} Here, the Buyers were the owners of record when the demolition took place. See *Dayton v. Leigh* (Aug. 23, 1995), 2d Dist. No. CA14888, at *2 (concluding that "the city did present sufficient evidence to allow the trier of fact to find that Leigh owned the property at the time it was demolished and therefore could be held liable for the demolition costs"). Although the Buyers did not become the owners of the Lincoln Street property until after the

condemnation notice and demolition order issued, they purchased the property with actual knowledge that it was condemned and its demolition was imminent. Whitehead specifically told Sherrard on the day of closing that the property was being demolished. Yet, the Buyers never took any action to stop the demolition that took place over a month later. See *Cincinnati v. York Masons Bldg. Assn.*, 1st Dist. Nos. C-080003 & C-080019, 2008-Ohio-4271, at ¶40 (upholding assessment of demolition costs because once the owner "received actual notice that the city intended to demolish the property, it was incumbent upon [it] to take some action to challenge the demolition, which did not actually occur until over a month later"). Sherrard only ever attempted to obtain a rehabilitation permit after the demolition order had already issued. She admitted that she did not know whether rehabilitation permits had any effect on condemnation proceedings.

{¶28} The record reflects that the Buyers purchased the Lincoln Street property at a largely reduced price and engaged in a calculated risk. Their own contract provided for cancellation in the event that the demolition occurred before closing. The Buyers did not present the trial court with any evidence that would raise a genuine issue of material fact with regard to whether they were liable for cost of the demolition. As such, the trial court did not err by granting summary judgment in favor of Oberlin on its counterclaim against the Buyers. The Buyers' fourth assignment of error is overruled.

III

{¶29} The Buyers' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

14

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR

APPEARANCES:

GINO PULITO, Attorney at Law, for Appellants.

ABRAHAM CANTOR, Attorney at Law, for Appellees.

ERIC R. SEVERS, Attorney at Law, for Appellees.

WILLIAM F. SCULLY, JR., Attorney at Law, for Appellee.