[Cite as *In re M.R.*, 2014-Ohio-2623.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 13 JE 30 |
| | ) | |
| M.R., A MINOR CHILD. | ) | O P I N I O N |
| | ) | |
| | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Criminal Appeal from Common Pleas Court, Juvenile Division, Case No. 12DL138. |
| JUDGMENT: | Affirmed. |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee: | Attorney Michael DeWine<br>Ohio Attorney General<br>Attorney Marianne Hemmeter<br>Assistant Attorney General<br>150 East Gay Street, 16th Floor<br>Columbus, Ohio 43215 |
| For Defendant-Appellant: | Attorney Timothy Young<br>Ohio Public Defender<br>Attorney Brooke Burns<br>Assistant Ohio Public Defender<br>250 East Broad Street, Suite 1400<br>Columbus, Ohio 43215 |

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: June 16, 2014

VUKOVICH, J.

{¶1} Juvenile-appellant M.R. appeals from his designation as a juvenile offender registrant on three constitutional grounds. First, appellant characterizes the provision in R.C. 2152.83(A) that the classification shall be made at the time of release from the secure facility as a double jeopardy violation. Appellant then states the statutory age distinctions with regards to registration constitute an equal protection violation, urging that there is no rational basis to differentiate between juveniles of different ages as provided by R.C. 2152.83, wherein different standards apply to: ages thirteen and under, ages fourteen and fifteen, and ages sixteen and seventeen. Finally, appellant contends that continuing the classification beyond age 21 is a due process violation and constitutes cruel and unusual punishment. For the following reasons, these arguments are overruled, and the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

{¶2} After conducting a trial, the Jefferson County Common Pleas Court, Juvenile Division, found appellant delinquent for committing the offense of rape. *See* R.C. 2907.029(A)(1)(c) (sexual conduct where victim's ability to resist or consent is substantially impaired because of a mental or physical condition and offender knows this or has reasonable cause to believe it). On March 17, 2013, appellant was sentenced to at least one year in the custody of the Department of Youth Services (DYS), which custody could last until appellant turned 21. The court stated that the offense was sexually oriented, appellant was 16 at the time of the offense, and he had no prior sexual offenses or child victim offenses. The court ordered juvenile sex offender treatment, stating that appellant shall not be released until the court holds a classification hearing. The court indicated that if appellant became eligible for a move from DYS to New Life for Youth Paint Creek facility, the court would approve a transfer.

{¶3} On June 6, 2013, appellant filed a brief in the juvenile court arguing that a classification would be unconstitutional on the three grounds aforementioned, and the state opposed those arguments. On August 2, 2013, the juvenile court found

appellant's constitutional arguments to lack merit. The classification hearing proceeded on August 16, 2013. The court reviewed a juvenile sex offender assessment completed by DYS and behavioral reports. The court classified appellant as a tier II registrant (and thus not subject to community notification). The court also ordered that appellant could be transferred to the Paint Creek facility.

{¶4} Appellant filed a timely notice of appeal. On appeal, he raises the three constitutional arguments that he presented prior to the classification hearing. He does not contest the factual bases for classification into tier II.

<u>JUVENILE CLASSIFICATION AS "PUNITIVE"</u>

{¶5} As a preliminary matter, we note that various arguments set forth by appellant are based upon the initial position that S.B. 10 as applied to juveniles is classified as a punitive rather than a remedial scheme. The state does not contest appellant's initial characterization of the classification system as punitive.

{¶6} The prior classification laws had been considered remedial rather than punitive. *See State v. Ferguson,* 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 29; *State v. Cook*, 83 Ohio St.3d 404, 418, 700 N.E.2d 570 (1998). After the enactment of the Adam Walsh Act in S.B. 10, the Supreme Court addressed whether the changes made to Chapter 2950 classifications could be applied retroactively to those who committed their crimes prior to the amendments but who were sentenced after the amendments, i.e. whether the classification scheme is now a punitive rather than a remedial law. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108.

{¶7} The *Williams* Court found that the S.B. 10 amendments were punitive based upon certain changes: automatic classification and registration, no evidentiary hearing, no trial court discretion as to tier, the inability to challenge the classification, the increase from ten years to twenty-five years (adult tier II) registration, and registration was required more often. *Id.* at ¶ 17-21 (stating that no one change compelled the decision). *Williams* dealt only with adult classification, and some of the concerns expressed are not involved in the juvenile classification at issue.

**{¶8}** Still, the Court broadly pronounced, "S.B. No. 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws." *Id.* at syllabus, ¶ 21. And, after reviewing the *Ferguson* dissent's rationale, the *Williams* Court announced: "Following the enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive." *Id.* at ¶16 (adding that the statutory scheme has changed dramatically since *Cook* and markedly since *Ferguson*).

**{¶9}** The Court then summarily reversed and remanded multiple juvenile cases for application of its 2011 *Williams* case. *In re Cases Held for the Decision in In re D.J.S.*, 130 Ohio St.3d 253, 2011-Ohio-5349, 957 N.E.2d 288; *In re D.J.S.*, 130 Ohio St.3d 257, 2011-Ohio-5342, 957 N.E.2d 291, ¶ 1. And, the Court later applied *Williams* to a juvenile in a case concluding that the earliest application of the S.B. 10 amendments in order to avoid retroactive application is the January 2008 effective date rather than the June 2007 enactment date. *In re Bruce S.*, 134 Ohio St.3d 477, 2012-Ohio-5696, 983 N.E.2d 350, ¶ 6, 12. Thus, even though the adult classification scheme contains major differences from the juvenile classification scheme, the Supreme Court has concluded that the new classifications are punitive as applied to juveniles as well. *See also In re Lilley*, 8th Dist. No. 98905, 2013-Ohio-3616, ¶ 11-12; *In re C.W.*, 4th Dist. No. 11CA918, 2013-Ohio-2483, ¶ 7.

**{¶10}** Finally, we add that the Supreme Court has concluded that the automatic tier III lifetime registration and community notification for a public-registry-qualified juvenile-offender registrant (PRQJOR) (with no chance of reclassification for 25 years) is not just punitive, but is cruel and unusual punishment. *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 86. The effect of this holding is discussed further in assignment of error number three. From here, we proceed under the overriding principle that the S.B. 10 amendments are punitive as applied to juveniles. This leads to appellant's first assignment of error.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶11} Appellant sets forth three assignments of error, the first of which provides:

{¶12} "Revised Code Section 2152.83(A) violates double jeopardy by allowing the juvenile court to impose multiple punishments for the same offense."

{¶13} Pursuant to the statutory division contested by appellant here, a court that adjudicates a 16 or 17 year old sexually oriented offender "shall issue as part of the dispositional order or, *if the court commits the child for the delinquent act to the custody of a secure facility, shall issue at the time of the child's release from the secure facility* an order that classifies the child a juvenile offender registrant * * *." (Emphasis added). R.C. 2152.83(A). Appellant essentially contends that the emphasized portion of the statute must be struck as violative of the double jeopardy clause. He urges that because he was not classified at the dispositional hearing, he could not thereafter be classified.

{¶14} Appellant begins by stating that juveniles are protected by double jeopardy principles. *See In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 23 (cannot impose sentence after probation completed), citing *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (cannot transfer juvenile to adult court for second trial after adjudicatory hearing). As the Ohio Supreme Court considers S.B. 10 punitive, appellant moves to the portion of the double jeopardy clause that prohibits multiple criminal punishments for the same offense in successive proceedings, noting that the federal and state double jeopardy clauses are coextensive. *See State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7 (the protection afforded by the double jeopardy clause in the Fifth Amendment to the United States Constitution and that in Section 10, Article I of the Ohio Constitution are coextensive). Appellant concludes that since the classification is considered punitive, the deferred classification hearing is now an unconstitutional successive proceeding that imposes more criminal punishment, citing the Supreme Court's *Raber* case in support.

**{¶15}** In *Raber*, the defendant was indicted for sexual battery (F2) but pled guilty to sexual imposition (M3). At sentencing, the parties disputed whether the sexually oriented offense involved consensual conduct based upon a statutory provision that one need not be classified if the offense involved "consensual sexual conduct or consensual sexual contact" with a victim over 18 years old who is not under the custodial authority of the perpetrator. The trial court asked the state to demonstrate the lack of consent, but according to the Ohio Supreme Court, the state failed to do so. *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 3. The parties agreed to brief the sexually oriented offender issue, but did not do so. A week later, the trial court entered judgment sentencing the defendant to sixty days in jail (thirty suspended) and two years of community control, without ordering him to register as a sexually oriented offender.

**{¶16}** Ten months thereafter, the court scheduled a classification hearing, which eventually proceeded (before another judge). The defendant's former girlfriend testified that she consented to vaginal but not anal sex. The court found that the defendant was a tier I sex offender, and at another hearing held one month later, the court provided the defendant with notice of his duties. The court then entered judgment on the classification, which ended up being more than 14 months after the final judgment of conviction and sentence.

**{¶17}** The Supreme Court invalidated the classification due to principles surrounding the finality of final judgments and double jeopardy. First, the Court also stated that the trial court lacked authority to modify its final judgment, noting that there is nothing in the record showing that at the time the court sentenced the defendant, it erred in failing to classify him and finding there was no clerical error or issue that would result in a void sentence. *Id.* at ¶ 20.

**{¶18}** The Court then pointed to their recent *Williams* decision that: "R.C. Chapter 2950 is punitive." *Id.* at ¶ 23, quoting *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16. And, the Court noted that it recently held that automatic, lifetime registration and notification on certain juvenile offenders

violated the constitutional prohibition against cruel and unusual punishment. *Id.*, citing *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 86.

{¶19} After reiterating the punitive nature of S.B. 10, the Court addressed the pertinent double jeopardy protection: "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against the imposition of multiple criminal punishments for the same offense in successive proceedings." *Id.* at ¶ 24, citing *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). "If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause." *Id.*, quoting *United States v. Fogel*, 829 F.2d 77, 87 (D.C.Cir.1987).

{¶20} The Court thus concluded the defendant had a legitimate expectation of finality when the court sentenced him and double jeopardy principles prohibited the trial court from reopening his case, conducting a separate trial to determine whether the sexual activity at issue here was consensual, and then classifying the defendant as a sex offender. *Id.* at ¶ 26. In sum, the trial court lacked authority to reopen the case to reconsider the final judgment it had entered, and the protections against double jeopardy barred it from classifying the defendant as a sex offender more than a year after it imposed sentence. *Id.* at ¶ 27.

{¶21} Appellant concludes that classifying him as a juvenile offender registrant at any time other than his disposition likewise violates double jeopardy and thus R.C. 2152.83(A)'s timing mechanism is unconstitutional. The state emphasizes the express authority for the bifurcated disposition in the statute of which an accused in presumed to have notice. The state additionally points out that the juvenile court's March 17, 2013 sentencing entry also provided appellant direct notification that classification would be deferred until his release. The state further expresses that the deferred hearing provides juveniles with time to be treated while in the juvenile facility in order to ameliorate certain negative tier classification criteria. As the trial court stated, "this provision favors juvenile defendants as they have the advantage of progressing in treatment before classification designation is set."

{¶22} *Raber* is not a case on point. The statute applicable to the adult in *Raber* provided that the court shall provide notice of the registration requirement at sentencing. *See Raber*, 134 Ohio St.3d 250 at ¶ 16, citing R.C. 2950.03(A)(2). To the contrary, R.C. 2152.83(A) specifically instructs the juvenile court to conduct the classification at release rather than at disposition where the 16 or 17 year old is committed to a secure facility. The clear terms of the statute dispel any notion that the disposition order is the type of order that would bar subsequent juvenile classification.

{¶23} Appellant's original brief does not raise the portion of *Raber* dealing with principles concerning modification of a final judgment. His reply brief, however, raises issues with entering a further sentence on a final order. Therein, he cites *In re Sekulich*, 65 Ohio St.2d 13, 15, 417 N.E.2d 1014 (1981), where a juvenile court's dispositional order fined a child $50 and transferred the case to another county's juvenile court for further disposition. The Supreme Court held that the first county entered a final appealable dispositional order, noting that the transfer statute does not allow transfer after disposition has been made. We note that a reply brief is not the place to raise a new argument.

{¶24} In any event, *Sekulich* did not deal with sexual offender classification or an express statute allowing a post-disposition or a continued-disposition proceeding to occur. Statutorily, a classification can be made after disposition where the juvenile is sent to a secure facility. Thus, unlike in *Raber* or *Sekulich*, the juvenile court does in fact have authority to hold the later hearing and impose the contested item, here a classification into a tier. Such statute also establishes that the pertinent portion of the double jeopardy clause is not violated here.

{¶25} That is, as aforementioned, "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against the imposition of multiple criminal punishments for the same offense in successive proceedings." *Raber*, 134 Ohio St.3d 350 at ¶ 24, citing *Hudson*, 522 U.S. at 99. This protection prohibits the punishment *only* "[if a defendant has a legitimate expectation of finality * * *." *Id.*, quoting *Fogel*, 829 F.2d at 87.

**{¶26}** For instance, a defendant has no legitimate expectation of finality regarding a sentence that is subject to direct review. *See State v. Holdcroft* , 137 Ohio St.3d 526, 1 N.E.2d 382, 2013-Ohio-5014, ¶ 16, citing *State v. Roberts*, 119 Ohio St.3d 294, 2008-Ohio-3835, 893 N.E.2d 818. The Ohio Supreme Court pointed out in *Holdcroft* how the United States Supreme Court charges a defendant with knowledge of a statute allowing the state to appeal from a certain sentence and thus he has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has run. *Id.*, citing *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

**{¶27}** In addressing whether an increase of a sentence on review constitutes multiple punishment in violation of the double jeopardy clause, the *DiFrancesco* Court explained that one may try to argue that "the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence * * *." *DiFrancesco*, 449 U.S. at 139. However, the Court concluded: "that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances, there can be no expectation of finality in the original sentence." *Id.* (also emphasizing that the punishment authorized by Congress was "clear and specific" and noting that the statute represents "a considered legislative attempt to attack a specific problem").

**{¶28}** Finally, the Ohio Supreme Court has upheld a statute which allows a judge to add any forgotten post-release control after sentence (and before release from the sentence) based upon the principle that the defendant has foreknowledge from the statute that such altered punishment can occur. *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶ 33 (this citation is to the holding regarding prospective application of the statute; the other holding in *Singleton*, that the statute cannot be applied retroactively, was affected by subsequent decision but is not pertinent here), citing *Fogel,* 829 F.2d at 87 ("A defendant has a legitimate expectation in the finality of a sentence unless he is or should be aware at sentencing that the sentence may permissibly be increased.").

**{¶29}** In sum, the juvenile court has statutory authority to enter a classification upon release from the secure facility rather than at disposition. The juvenile being sentenced to a secure facility has statutory notice that classification will not occur at initial disposition but will be deferred until release. Because the statute clearly provides for a deferred classification until the time of release from the secure facility, the juvenile had no "legitimate expectation of finality" with regards to classification at the time of the disposition order committing him to a secure facility and thus there is no double jeopardy violation. This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

**{¶30}** Appellant's second assignment of error contends:

**{¶31}** "The Jefferson County Juvenile Court erred when it classified M.R. as a juvenile offender registrant because M.R.'s status as a mandatory registrant under R.C. 2152.83(A) violates the Equal Protection Clauses of the United States and Ohio Constitutions."

**{¶32}** Where a child aged 16 or 17 commits a sexually oriented offense, the juvenile court must classify the child as a juvenile offender registrant. *See* R.C. 2152.83(A)(1). However, the choice of which tier to place the child in is discretionary with the juvenile judge (as opposed to adults who are automatically placed in a tier based upon the offense committed). *See* R.C. 2152.83(A)(2); R.C. 2950.01(E)-(G), (M). The juvenile judge need not classify a first-time 14 or 15 year old sex offender; thus, whether to classify those juvenile sexual offenders at all is discretionary with the juvenile judge. *See* R.C. 2152.83(B)(1)-(2). And, a juvenile court cannot classify those aged 13 or under. *See* R.C. 2152.83.

**{¶33}** Appellant states that these classifications based upon age violate the equal protection clause contending that there is no rational basis for the disparate treatment of juveniles whom he believes are similarly situated. He urges that differential treatment is not supported by empirical evidence. Appellant cites to some studies that he reviewed in his memorandum to the trial court on this issue, dealing with the negative impact of registration on juveniles, the importance of treatment in decreasing recidivism risk for juveniles, and the lack of studies proving that juvenile

registration decreases recidivism. The focus seemed to be on juvenile classification as a whole.

**{¶34}** The juvenile court's entry overruling the equal protection argument found that differences based upon the age of a juvenile are self-evident and that nothing was presented in the case which would overcome the statute's presumption of constitutionality. At his classification hearing, appellant presented the testimony of a psychologist who testified in accordance with the studies he cited but did not make statements regarding the classification *among* juveniles. The juvenile court pointed out that even if the court had discretion concerning whether to classify appellant (as it does for a 14 or 15 year old), the court still would have chosen to classify him. (Tr. 32).

**{¶35}** An equal protection analysis progresses the same under both the Ohio and the United States Constitutions. *State v. Thompkins*, 75 Ohio St.3d 558, 561, 664 N.E.2d 926 (1996). Where the challenger does not raise a suspect classification or a fundamental right, the test provides that class distinctions among individuals are permissible if they bear some rational relationship to a legitimate governmental objective. *Id.* Notably, *similarly situated* persons must be treated alike, unless a rational basis justifies treating them differently; the test "does not require things which are different in fact * * * to be treated in law as though they were the same." *Ohio Apt. Assn. v. Levin*, 127 Ohio St.3d 76, 2010-Ohio-4414, 936 N.E.2d 919, ¶ 38 (thus a comparison of only similarly situated individuals is imperative). *See also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (equal protection directs that all persons similarly situated should be treated alike).

**{¶36}** Under the rational basis level of scrutiny, legislative classifications can be invalidated only if they bear no relation to the state's goals and no ground can be conceived to justify them. *Thompkins*, 75 Ohio St.3d at 561. As we consider any conceivable justification, the state has no actual litigation burden in facing a challenge to the rationality of a statutory classification. *Levin*, 127 Ohio St.3d 76, at ¶

34; *State v. Williams*, 88 Ohio St.3d 513, 531, 728 N.E.2d 342 (2000). Rather, the challenger must negate every conceivable basis. *Williams*, 88 Ohio St.3d at 531.

{¶37} This rational basis test is not stringent and is even considered "relatively relaxed" as "the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Classifications are thus presumed to be valid. *Id.* Perfect classifications are not necessary let alone possible, and a law is not violative of equal protection rights merely because the classifications are imperfect. *Id.* at 314, 316. Consequently, there is "substantial deference to the predictive judgment" of the legislature. *Williams*, 88 Ohio St.3d at 531.

{¶38} The Eleventh District has addressed an argument by a 15 year old that the juvenile registration classifications based upon age violate his equal protection rights as a line is drawn so that 13 year olds are not subject to registration. *In re B.D.*, 11th Dist. No. 2011-P-0078, 2012-Ohio-4463. The court first suggested that the juvenile failed to show that a 14 or 15 year old is similarly situated to a 13 year old. *Id.* at ¶ 31. The *B.D.* court continued that even if proximity in age suggests a similar situation: the legislature made a policy decision to exclude 13 year olds from the classification scheme; this is a uniquely legislative function; the line drawn is presumed constitutional; and the legislature's decision was not unreasonable. *Id.* at ¶ 31-21.

{¶39} The Third District has discussed the legislative concern for sex offender recidivism and public safety and concluded that the legislature rationally concluded that the lower the age of the offender, the reduced likelihood of recidivism, thereby granting the juvenile court discretion in determining whether a sex offender classification is needed when the offender is younger. *In re J.M.*, 3d Dist. No. 16-12-01, 2012-Ohio-4109, ¶ 32. *See also In re Forbess*, 3d Dist. No. 02-09-20, 2010-Ohio-2826, ¶ 56 (overruling assignment of error that R.C. 2152.83 violated the juvenile's right to equal protection because it subjects offenders to mandatory or discretionary classifications depending upon their age at the time of the offense;

stating that the position of their district is that the juvenile classifications do not violate the equal protection clause).

**{¶40}** The Fourth District has also concluded that juvenile offender age classifications do not violate equal protection principles because the lines drawn are rationally related to legitimate government interest in protecting the public. *In re C.P.*, 4th Dist. No. 09CA41, 2010-Ohio-1484, ¶ 25. That case was reversed by the Supreme Court on other grounds involving the mandatory, automatic classification for public registry qualified juveniles, under cruel and unusual punishment and due process, without a ruling on the equal protection holdings made below. *See In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1445, 967 N.E.2d 729.

**{¶41}** Here, appellant, who was 16 at the time of the offense, raises both the line at age 14 and the line at age 16. First, it is not difficult to rationally conclude that children who are 13 and under are not similarly situated to a 16 or 17 year old. A better case for similarly situated juveniles could be made for a 16 year old versus a 15 year old, which appellant also asserts. Even if juveniles of those ages are similarly situated, the drawing of the lines here has some rational basis to a legitimate interest.

**{¶42}** Appellant essentially states there is no scientific evidence that a 16 year old is more likely to reoffend than a 14 or 15 year old. However, this validly enacted statute is presumed constitutional, and the state need not present such evidence. *See Levin*, 127 Ohio St.3d 76, at ¶ 34. Rather, the court is to evaluate whether the line drawn bears any conceivable rational relation to the state's legitimate goals. *See Thompkins*, 75 Ohio St.3d at 561

**{¶43}** The state cites many laws that draw age-based lines for juveniles based upon legislative decisions. *See, e.g.,* R.C. 5139.05(A) (10 year old can be held in DYS custody for certain offenses, but those 9 and under cannot); R.C. 2152.10 (discretionary bindover for juveniles 14 and over but not for those 13 and under; mandatory bindover for juveniles 16 and 17 for certain offenses but not for those 14 and 15 unless certain priors; and no mandatory bindover for those under 16

for category 2 offenses).  Legislatures regularly classify juveniles based upon age; this is the function of the legislature.

**{¶44}** The purpose of sex offender registration is ultimately to protect the public.  *See* R.C. 2950.02 (including by exchanging information between agencies). As the state argues, it is a core premise of the juvenile system that as a juvenile matures, he becomes more responsible and thus more accountability can be expected.  The state urges that the prohibition on classifying those 13 and under, the discretionary classification of those 14 and 15, and the mandatory classification of sex offenders who are 16 and 17 evinces a rational common sense adoption of the theory that younger children are less culpable, less accountable, and less dangerous. It is not unreasonable to act under the belief that it is easier to reform, retrain, and rehabilitate a younger child than an older child.  As the state points out, an older juvenile will also "age out" of the system sooner than a younger juvenile and thus there is less time available to provide the older juvenile with rehabilitative services, making registration for tracking and agency coordination purposes more desirable.

**{¶45}** As appellant's studies suggest, juvenile sex offenders are more responsive to treatment than adult sex offenders.  And, this is reflected in the deferred classification until release after treatment in the secure facility, the review at final disposition, and the ability to seek declassification three years later and again thereafter.  It is not irrational for legislators to conclude that the farther a juvenile is from adulthood, the more responsive he will be to treatment.  From this, the legislature could reason that the lower the age of the offender, the reduced likelihood of recidivism and thus the decreased need for tracking.

**{¶46}** We rule that there is some rational, conceivable reason for drawing a line so that 14 and 15 year old sex offenders will only be subject to discretionary classification rather than the mandatory classification (into a discretionary tier) that 16 and 17 years old are subject to.  *Accord In re Forbess*, 3d DIst. No. 02-09-20 at ¶ 56; *In re J.M.*, 3d Dist. No. 16-12-01 at ¶ 32 (not equal protection violation to make juvenile court's decision to classify discretionary or mandatory depending on juvenile's age at the time of the offense).  *See also In re B.D.*, 11th Dist. No. 2011-P-

0078 (rational basis for drawing line at 14 for beginning classifications). This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER THREE

**{¶47}** Appellant's final assignment of error provides:

**{¶48}** "The Jefferson County Juvenile Court erred when it classified M.R. as a tier II juvenile offender registrant because the imposition of any classification period that extends beyond the age jurisdiction of the juvenile court violates a youth's right to due process and constitutes cruel and unusual punishment under the United States and Ohio Constitutions."

**{¶49}** Juvenile offenders must register every year for 10 years in tier I, every six months for 20 years in tier II, and every 90 days for life in tier III. R.C. 2950.07(B). Pursuant to R.C. 2953.83(E), a juvenile classification order shall remain in effect for the period of time specified in R.C. 2950.07, subject to any reclassification or declassification. "The child's attainment of eighteen or twenty-one years of age does not affect or terminate the order, and the order remains in effect for the period of time described in this division." R.C. 2953.83(E).

**{¶50}** Moreover, in providing that dispositional orders are temporary and continue for the period designated in the order until terminated or modified by the court or the child reaches age 21, R.C. 2152.22(A) provides an exception for the juvenile offender provisions contained in R.C. 2152.82 through 2152.86 and for any other law specifying a different duration for a dispositional order. Yet another statute provides that if a child over 14 is adjudicated a delinquent child for committing a sexually oriented offense or a child-victim oriented offense, then R.C 2152.82 through 2152.86 apply. R.C. 2152.19(A). "In addition to any order of disposition it makes of the child under this chapter, the court may make any determination, adjudication, or order authorized under sections 2152.82 to 2152.86 and Chapter 2950 of the Revised Code and shall make any determination, adjudication, or order required under those sections and that chapter." R.C. 2152.191(B).

**{¶51}** Finally, the juvenile court has exclusive original jurisdiction to "conduct the hearings, and to make the determinations, adjudications, and orders authorized

or required under sections 2152.82 to 2152.86 and Chapter 2950. of the Revised Code regarding a child who has been adjudicated a delinquent child * * *." R.C. 2151.23(A)(15). *See also State ex rel. N.A. v. Cross*, 125 Ohio St.3d 6, 2010-Ohio-1471, ¶ 13 (stating that even though N.A. was over 21 and could not be incarcerated, "the delinquency proceeding is still important because if he is adjudicated a delinquent child based on the rape offenses, N.A. would still be subject to the juvenile-offender-registration provisions.").

{¶52} Appellant states that the requirement that the classifications extend past age 21, which is the maximum time he could be incarcerated, violates principles of due process and constitutes cruel and unusual punishment. He emphasizes that the purpose of the juvenile system is supposed to be guidance and rehabilitation rather than punishment, pointing out that the registration scheme is now considered punitive. He relies on the principles from the Supreme Court's *In re C.P.* case to support his due process and cruel and unusual punishment arguments here.

{¶53} In that case, a juvenile appealed his designation as a tier III juvenile offender registrant and public-registry-qualified juvenile-offender registrant (PRQJOR) for whom there was automatic classification into tier III with lifelong registration (albeit subject to review after 25 years) and community notification as required by R.C. 2152.86. The Court struck R.C. 2152.86 as violative of both due process and the prohibition on cruel and unusual punishment. *See In re C.P.,* 131 Ohio St.3d 513, 2012-Ohio-1445, 967 N.E.2d 729. As to the latter doctrine, Article I, Section 9 of the Ohio Constitution and the Eighth Amendment to the United States Constitution prohibit the infliction of cruel and unusual punishments.

{¶54} In this context, the review concerned whether a particular punishment is disproportionate to the crime considering the nature of the offender. *Id.* at ¶ 25-27. In analyzing R.C. 2152.86, the Supreme Court emphasized that the juvenile at issue remained under the jurisdiction of the juvenile court and pointed to the nature of sex offenses as being far removed from murder. *Id.* at ¶ 28, 42-43, distinguishing *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010) (sentence of life without parole prohibited for juvenile offender who did not commit

homicide) and *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (death penalty prohibited for those who committed crime before age 18).

**{¶55}** The *In re C.P.* Court pointed out that the automatic community notification requirement is no longer necessary in order for states to be considered compliant with the requirements of federal sex offender law, evidencing a national shift in consensus on that topic. *Id.* at ¶ 34-37. The Court looked at culpability and pointed out that juveniles are less culpable than adults and "their bad acts are less likely to reveal an unredeemable corruptness." *Id.* at ¶ 39-40.

**{¶56}** The Court then looked at the severity of the punishment and stated that registration and notification requirements for life, with the possibility of having them lifted only after 25 years, are "especially harsh punishments for a juvenile," adding that the length of the punishment is extraordinary for a juvenile and is imposed at an age at which the offender's character is not yet fixed. *Id.* at ¶ 44-45. The Court noted the stigmatization and the hampering of the juvenile's education, relationships, and employment. *Id.* at ¶ 45 (noting that a juvenile who remains under the authority of the juvenile court and has thus been adjudged redeemable will have his entire life evaluated through the prism of his juvenile adjudication).

**{¶57}** The Court next reviewed the penological justifications and concluded that lifetime registration and notification requirements run contrary to the system's goals of rehabilitating the offender and aiding his mental and physical development, stating: "Notification and registration anchor the juvenile offender to his crime." *Id.* at ¶ 47. It was difficult to say how much public safety is affected in individual cases, because the PRQJOR statutory scheme gives the juvenile judge no role in determining how dangerous a juvenile might be or what level of registration or notification would be adequate to preserve the safety of the public. *Id.* at ¶ 48.

**{¶58}** The Court found the PRQJOR penalties meet the statutory objective of accountability but the depth and duration of accountability that R.C. 2152.86 requires of a juvenile offender are excessive, and the statute only minimally meets the goal of restoring the victim. *Id.* at ¶ 49. Retribution is not as justified with a less culpable defendant, and juveniles are less likely to be deterred by the threat of negative

consequences to their future reputation. *Id.* at ¶ 51-52. It was noted that the effects of the stigma can actually lead to reoffending. *Id.* at ¶ 54-55. The Court concluded that penological theory was not adequate to justify the imposition of the lifetime registration and notification requirements in R.C. 2152.86 and that for a juvenile offender who remains under the jurisdiction of the juvenile court, automatic imposition of lifetime sex-offender registration and notification requirements is cruel and unusual punishment under the Eighth Amendment. *Id.* at ¶ 58-59.

**{¶59}** *In re C.P.* also evaluated whether it was cruel and unusual punishment under the Ohio Constitution, stating that lack of proportionality is a key factor and then evaluating whether the punishment is so greatly disproportionate to the offense that it shocks the community's sense of justice. *Id.* at ¶ 60. It was emphasized that under R.C. 2152.86, the juvenile court "is given absolutely no discretion over the portion of the juvenile's penalty that could extend for a lifetime" and a lifetime punishment is imposed with no chance for reconsideration of its appropriateness for 25 years. *Id.* at ¶ 61. The Court distinguished the case from punishments for other juvenile offenders, whose cases are reevaluated when their juvenile disposition ends and at regularly scheduled intervals thereafter. *Id.*

**{¶60}** The Supreme Court also found that the punishment of lifetime exposure for a wrong committed in childhood runs counter to the private nature of our juvenile court system and the core principle of confidentiality "is trampled by any requirement of public notification." *Id.* at ¶ 62-68 (and reiterating the stigma concerns involving in notification). It was concluded that the "public punishments required by R.C. 2152.86 are automatic, lifelong, and contrary to the rehabilitative goals of the juvenile system" and thus "shock the sense of justice of the community" and violate Ohio's prohibition against cruel and unusual punishments. *Id.* at ¶ 69.

**{¶61}** The Court then proceeded to invalidate R.C. 2152.86 on due process grounds as well, after expressing that juvenile due process standards are inexact and the predominant concern is fundamental fairness to be balanced with flexibility and the informality of juvenile court. *Id.* at ¶ 71-73. The Court pointed out how it had recently ruled that a juvenile was not entitled to a jury to make the factual findings

required for imposing the adult portion of a serious youthful offender sentence, emphasizing the discretionary role of the juvenile judge in the disposition of a juvenile case. *Id.* at ¶ 74-77, citing *In re D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209.

**{¶62}** The Court criticized R.C. 2152.86's automatic imposition of a lifetime punishment (with no chance of reconsideration for 25 years), which was described as an adult punishment, without the benefit of a juvenile judge weighing the appropriateness of that punishment. *Id.* at ¶ 77-78. (and noting that the court cannot consider individual factors about a child and his background, cannot determine how often the child must register or where, or determine how publication may affect rehabilitation). The Court concluded that automatic long-term punishment is contrary to the juvenile system's core focus on individual, corrective treatment and rehabilitation and that fundamental fairness requires that the judge decide the appropriateness of any such penalty. *Id.* In stating that it also conflicts with the discretion of the judge under the serious youthful offender statute (as judge has the discretion not to invoke the adult sentence), the Court noted that the punishment lasts far longer than the jurisdiction of the juvenile court. *Id.* at ¶ 83.

**{¶63}** The Ohio Supreme Court made some strong statements in that case. However, it was a case about automatic lifetime tier III classification with community notification for certain juveniles. Notably, appellant does not argue that classification itself is cruel and unusual punishment or violative of due process, but rather, he argues that continued application of the registration requirements beyond age 21 constitutes cruel and unusual punishment and violates due process.

**{¶64}** We cannot conclude that the mere fact that registration may be required past age 21 would make a scheme cruel and unusual or shocking to a sense of justice under the analysis set forth *In re C.P.* There is mandatory classification for 16 and 17 years olds such as appellant; however, there is no automatic tier placement based upon the offense as the juvenile court has discretion on the choice of tier after the juvenile has been provided with an evidentiary hearing and after the juvenile has had an opportunity to seek treatment. (And, in the case at bar, the juvenile court

declared it would have classified appellant even if classification were discretionary for 16 and 17 year olds, and the court imposed tier II using that discretion rather than tier I.)

**{¶65}** Moreover, the tier placement can be appealed by the juvenile. In addition, the juvenile court can decrease the tier classification upon the juvenile's completion of the disposition. R.C. 2152.84(A)(1), (2)(c) (16 or 17 year olds can be reclassified at completion of disposition but cannot yet be declassified as 14 or 15 year olds can be). Three years thereafter, the juvenile can file a petition seeking declassification (or reclassification) and can then file another petition three years later and yet another petition five years later. R.C. 2152.85(B)(1)-(3). Importantly, there are no issues with community notification (automatic or discretionary) as that only becomes an option under tier III.

**{¶66}** The state notes that the First District has overruled an argument that due process is violated by requiring registration past age 21. *In re Raheem L.*, 1st Dist. No. C-100608, 2013-Ohio-2423, appeal not allowed by 136 Ohio St.3d 1560, 2013-Ohio-4861, 996 N.E.2d 987 and 137 Ohio St.3d 1478, 2014-Ohio-176, 2 N.E.3d 271 (reconsideration denied). *See also In re N.Z.*, 11th Dist. No. 2012–L–100, 2014-Ohio-157, ¶ 1, 36-47 (overruling juvenile's argument that classification is unconstitutional in violation of due process clause because the required registration period extends beyond his 21st birthday). The state also points out that after invalidating R.C. 2152.86, the *In re C.P.* court remanded the case (to the appellate court) for further proceedings without merely striking the classification and with no indication that the remaining statutes should not be applied to that juvenile on remand, suggesting that the remaining statutes would apply to that juvenile. That is, appellant seeks to apply the analysis in that case to the remaining statutes which the Supreme Court likely envisioned would govern C.P on remand.

**{¶67}** In its exhaustive analysis, the *In re C.P.* Court made a mere passing reference to the fact that registration extends beyond typical juvenile jurisdiction, and their comment mainly related to how very far past age 21 a lifetime classification

goes. Many juveniles are not even classified until just before or on their 21st birthday on their release from the secure facility.

**{¶68}** In sum, there is no community notification involved here, and the juvenile judge has a role in determining how dangerous the juvenile might be or what level of registration would be adequate to preserve the safety of the public. See *In re C.P.,* 131 Ohio St.3d 513 at ¶ 48. Considering that the judge has initial discretion in choosing a tier for a 16 or 17 year old, who can present evidence at a hearing in support of a lower tier, and considering that the classification can be reduced at final disposition and can be eliminated three years after final disposition, the mere fact that the classification can extend beyond age 21 is not cruel and unusual, nor does it shock the conscience or raise concerns with fundamental fairness. *See id.* at ¶ 61 (distinguishing automatic lifetime tier III from punishments for other juvenile offenders, whose cases are reevaluated when their juvenile disposition ends and at regularly scheduled intervals thereafter).[1] This assignment of error is overruled.

**{¶69}** For the foregoing reasons, the judgment of the trial court is affirmed.

Donofrio, J., concurs.
DeGenaro, P.J., concurs.

---

[1]Moreover, any declaration that juvenile classifications must be eliminated upon the juvenile's mere attainment of age 21 based upon an extension of the *In re C.P.* holding should come from the Ohio Supreme Court. *See In re C.P.,* 131 Ohio St.3d 513 at ¶ 60 (cruel and unusual punishment holdings are rare). *See also In re C.W.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 80 (the meaning of "fundamental fairness" can be "opaque" and applying this aspect of due process is an "uncertain enterprise").