[Cite as *Riverside v. State*, 2016-Ohio-2881.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF RIVERSIDE | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 26840 |
| | : | |
| v. | : | T.C. NO. 13CV4691 |
| | : | |
| STATE OF OHIO | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___6th___ day of _____May_____, 2016.

. . . . . . . . . .

DANIEL J. BUCKLEY, Atty. Reg. No. 0003772 and ADAM C. SHERMAN, Atty. Reg. No. 0076850 and JACOB D. MAHLE, Atty. Reg. No. 0080797 and JESSICA K. BAVERMAN, Atty. Reg. No. 0083951, 301 East Fourth Street, Suite 3500, Great American Tower, Cincinnati, Ohio 45202
        Attorneys for Plaintiff-Appellant

ZACHERY KELLER, Atty. Reg. No. 0086930 and NICOLE M. KOPPITCH, Atty. Reg. No. 0082129 and BRODI J. CONOVER, Atty. Reg. No. 0092082, Assistant Attorneys General, Constitutional Offices Section, 30 East Broad Street, 16th Floor, Columbus, Ohio 43215
        Attorneys for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

        **{¶ 1}** The City of Riverside appeals from a judgment of the Montgomery County

Court of Common Pleas, which granted the State's motion for summary judgment, denied

Riverside's motion for summary judgment, and dismissed Riverside's case. The parties' disagreement, in general, and their motions for summary judgment, in particular, concerned the constitutionality of a statute creating an exemption from municipal income tax, which was enacted in 2007. The dispute related to employees and contractors who work at Wright Patterson Air Force Base (WPAFB), some parts of which are located in Riverside.

{¶ 2} As a preliminary matter, we note that the parties and the trial court consistently refer to the disputed statutory section as R.C. 718.01(H)(11). The current R.C. 718.01(H), which is in the "Definitions" section of R.C. Chapter 718, Municipal Income Taxes, states, in its entirety: " 'Schedule F' means internal revenue service schedule F (form 1040) filed by a taxpayer pursuant to the Internal Revenue Code"; it does not contain any subsections, not does it specifically address an exception to the municipal commuter income tax. R.C. 718.01 and other statutes governing income taxes imposed by municipal corporations were "amend[ed], for the purpose of adopting a new section number * * *, to enact new sections * * *, and to repeal [former] sections * * *" by Am.Sub.H.B. 5 in 2014. Although Am.Sub.H.B. 5 does not explicitly state how the statutes, including R.C. 718.01, were reorganized and renumbered, the provision at issue in this appeal now appears at R.C. 718.01(C)(13). We will refer to it as such, except when quoting from the trial court's decision.

***Legislative History and Procedural History***

{¶ 3} The trial court's judgment contains a helpful overview of the history of this case:

> In 1994, the Village of Riverside merged with Mad River Township to

create the City of Riverside. Prior to the merger, Mad River Township included portions of WPAFB, and, thus, as a consequence of the merger, parts of WPAFB are now physically located within Riverside, including the area of WPAFB formerly known as Page Manor, the National Museum of the United States Air Force, and part of "Area B."

Pursuant to Riverside Codified Ordinance 181.03(a)(1)-(5), Riverside imposes a 1.5% tax on all income earned in Riverside by both resident and nonresident individuals and businesses. Three years after the merger, on or around April 1997, Riverside attempted to impose its income tax on commuter employees and contractors working at WPAFB, claiming that portions of WPAFB were within Riverside's boundaries and specifically requesting that WPAFB withhold municipal income taxes from the wages of its employees. WPAFB refused to withhold those taxes, and, on August 28, 1998, Riverside filed a federal lawsuit in federal court against the United States, the Department of Defense, and WPAFB's commanding officer. Riverside voluntarily dismissed that lawsuit approximately three years later in May 2001, apparently deciding to pursue other ways to tax WPAFB employees.

In 2003, Riverside became involved in a tax dispute with two private corporations that performed work at WPAFB. The corporations filed a lawsuit in this court [the Montgomery County Court of Common Pleas] under *Case No. 2003-CV-3795*, seeking to enjoin Riverside from levying taxes against them. Riverside filed counterclaims seeking payment of municipal

taxes, and this court granted summary judgment to Riverside, finding that certain relevant statutes did not require Riverside to obtain approval from the Secretary of Defense before merging land that included areas of WPAFB. Following that ruling in favor of Riverside, Riverside obtained the names and mailing addresses of civilian and contracting employees working on WPAFB. On or around April 2007, Riverside began contacting these workers and informing them that, if they worked in the Riverside portions of WPAFB, they were subject to Riverside's income tax.

Decision, Order, and Entry (August 19, 2015).

**{¶ 4}** In June 2007, the Ohio General Assembly passed R.C. 718.01(F)(11), which was later recodified as R.C. 718.01(H)(11) and then R.C. 718.01(C)(13), with some minor changes not relevant to this appeal.

**{¶ 5}** R.C. 718.01(C)(13), the "Definitions" section of R.C. Chapter 718, Municipal Income Taxes, states that "exempt income" includes:

(13) Compensation paid to a person employed within the boundaries of a United States air force base under the jurisdiction of the United States air force that is used for the housing of members of the United States air force and is a center for air force operations, unless the person is subject to taxation because of residence or domicile. If the compensation is subject to taxation because of residence or domicile, tax on such income shall be payable only to the municipal corporation of residence or domicile.

The definition of "municipal taxable income" excludes "exempt income." R.C. 718.01(A)(1).

**{¶ 6}** As a result of R.C. 718.01(C)(13), employees and contractors presently working at a portion of WPAFB that is within Riverside qualify for an exemption from paying municipal income tax, unless they also live in Riverside.

### *The Current Case*

**{¶ 7}** The trial court stated as follows:

On August 8, 2013, Plaintiff, City of Riverside, filed its Complaint for Declaratory Judgment and Injunctive Relief against Defendant, State of Ohio, seeking a declaration that R.C. 718.01(H)(11) [now R.C. 718.01(C)(13)] violates the Equal Protection Clause of the United States Constitution and the Ohio Constitution, and seeking an entry of permanent injunction prohibiting enforcement of the subject statute. In its Complaint, Riverside alleged that it began to levy its municipal income tax on civilian employees and contractors who were employed at Wright Patterson Air Force Base (WPAFB) and who worked or lived on portions of the WPAFB located within Riverside's city limits. The tax was imposed by Riverside allegedly for the purpose of providing funds for general municipal operations, maintenance, new equipment, extension and enlargement of municipal services and facilities, and capital improvements. According to Riverside, after it began levying the tax, the Ohio General Assembly enacted R.C. 718.01(F)(11), later codified as R.C. 718.01(H)(11), as an amendment to the biennial budget bill. Riverside alleged that R.C. 718.01(H)(11) [now R.C. 718.01(C)(13)] discriminatorily prohibits municipal assessment of income taxes on certain civilian employees and contractors

who work within Riverside on the grounds of a narrowly-defined type of air force base, and, thus, is unconstitutional because it violates the Equal Protection Clauses of both the United States Constitution and the Ohio Constitution.

Decision, Order, and Entry (August 19, 2015).

{¶ 8} Each of the parties (Riverside and the State of Ohio) filed a motion for summary judgment on April 15, 2015. On August 19, 2015, the trial court granted the State's motion, denied Riverside's motion, and dismissed the case.

### The Arguments on Appeal

{¶ 9} Riverside appeals, raising two assignments of error. The first assignment addresses three discovery issues on which the trial court ruled before entering summary judgment, as well as an argument that R.C. 718.01(C)(13) violates the Equal Protection Clauses. The second assignment asserts that the trial court "appl[ied] the incorrect summary judgment standard."

### Riverside's Equal Protection Arguments

{¶ 10} We will begin our analysis with Riverside's equal protection arguments under its first assignment of error.

{¶ 11} Riverside contends that the trial court "misapplied rational basis review" in concluding that the municipal income tax exemption created by R.C. 718.01(C)(13) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions. It asserts that there "is no evidence" of a legitimate state interest to which the statute is rationally related. Riverside claims that three classes of Ohio citizens are adversely affected by the exemption: 1) Riverside residents, 2) individuals who are not Riverside

residents but who work within Riverside on premises other than WPAFB (and therefore pay the commuter income tax), and 3) federal employees who work somewhere in Riverside other than WPAFB. Riverside's standing to raise these issues was addressed in a prior Opinion of this court, *Riverside v. Ohio*, 2d Dist. Montgomery No. 26024, 2014-Ohio-1974, and resolved in Riverside's favor.

**{¶ 12}** "[S]tatutes are presumed to be constitutional and * * * courts have a duty to liberally construe statutes in order to save them from constitutional infirmities." *Pickaway Cty. Skilled Gaming, LLC v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 20, quoting *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.,* 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 12. The party challenging the constitutionality of a statute "bears the burden to negate every conceivable basis that might support the legislation." *Id.*, citing *Columbia Gas Transm. Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91.

**{¶ 13}** The federal and Ohio equal protection provisions are "functionally equivalent" and "are to be construed and analyzed identically." *Id.* at ¶ 17, citing *State v. Williams,* 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 18, and *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.,* 87 Ohio St.3d 55, 60, 717 N.E.2d 286 (1999). Courts apply varying levels of scrutiny to equal protection challenges depending on the rights at issue and the purportedly discriminatory classifications created by the law. "[A] statute that does not implicate a fundamental right or a suspect classification does not violate equal-protection principles if it is rationally related to a legitimate government interest." *Williams* at ¶ 39, citing *Eppley* at ¶ 15; *Pickaway Cty. Skilled Gaming* at ¶ 18.

**{¶ 14}** The State and Riverside agree that this case does not involve a fundamental right or suspect classification, and that rational-basis review applies.

**{¶ 15}** The rational-basis test involves a two-step analysis. First, a valid state interest must be identified. Second, the court must determine whether the method or means by which the State has chosen to advance that interest is rational. *Pickaway Cty. Skilled Gaming* at ¶ 19, citing *McCrone v. Bank One Corp.,* 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 9. " 'Under the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification.' *Columbia Gas Transm. Corp.* [at] ¶ 91, citing *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter* [at 60]. * * *" *Id.* at ¶ 20.

**{¶ 16}** The rational-basis standard requires a high degree of judicial deference to legislative enactments. *Ohio Apt. Assn. v. Levin*, 127 Ohio St.3d 76, 2010-Ohio-4414, 936 N.E.2d 919, ¶ 35; *Am. Assn. of Univ. Professors* at 93. "Moreover, it is well settled that assessment of taxes is fundamentally a legislative responsibility, and this already deferential standard is especially deferential in the context of classifications arising out of complex taxation law." (Internal citations omitted.) *Ohio Apt. Assn.* at ¶ 35, citing *Park Corp. v. Brook Park,* 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 23, and *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). "[I]n structuring internal taxation schemes 'the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' " *Nordlinger* at 11, quoting *Williams v. Vermont,* 472 U.S. 14, 22, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985).

**{¶ 17}** In *Regan v. Taxation with Representation of Washington,* 461 U.S. 540,

103 S.Ct. 1997, 76 L.Ed.2d 129 (1983), the United States Supreme Court further commented on the standard for reviewing equal protection challenges to taxation schemes:

> "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized.... The passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden.  It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.   The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

*Id.* at 547-548, quoting *Madden v. Kentucky,* 309 U.S. 83, 87-88, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

{¶ 18}  The cases relied upon by Riverside do not contradict or undermine the equal protection analysis described above, and present significantly different facts than those at issue here.  *See, e.g., Allegheny Pittsburgh Coal Co. v. Cty. Com'n of Webster*

*Cty., W. Va.*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) (finding system of property tax assessment that resulted in "gross disparity" in valuation of comparable properties over a lengthy period of time violated the Equal Protection Clause); *General Electric Co. v. DeCourcy*, 60 Ohio St.2d 68, 397 N.E.2d 397 (1979) (dealing with entitlement to interest on, as well as a refund of, real estate taxes wrongly collected). Another case cited by Riverside, *Graf v. Warren*, 10 Ohio St.2d 33, 225 N.E.2d 262 (1967), explicitly recognizes the legislature's latitude in this area:

> * * * [T]he General Assembly may not discriminate against members of the same class by denying some members of the class a tax exemption given to others. * * * However, the General Assembly has a wide discretion in finding distinctions that will justify classifications.

(Internal citations omitted.) *Id.* at 39.

{¶ 19} Because the parties agree, and we find, that this case does not involve a suspect classification or a fundamental right, the legislature's enactment of an exemption to a municipality's commuter income tax for Air Force base employees and contractors must be upheld if it is rationally related to a legitimate governmental interest.

{¶ 20} Notably, Ohio does not maintain a comprehensive legislative history of its statutes. *State v. South*, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, ¶ 20, citing *State v. Dickinson,* 28 Ohio St.2d 65, 67, 275 N.E.2d 599 (1971). Thus, even if relevant, there is no means to analyze the exact or most-often cited arguments in support of legislation. Instead, courts rely on the language the legislature chose and Ohio's long-established rules of statutory construction. *Id.* As Justice Holmes opined, "[w]e do not inquire what the legislature meant; we ask only what the statute means." Oliver Wendell

Holmes, *The Theory of Legal Interpretation,* 12 Harvard L.Rev. 417, 419 (1899).   *See also Adams v. Village of Enon*, 2d Dist. Clark No. 2012-CA-42, 2012-Ohio-6178, ¶ 48.

### *Declaratory Judgment and Summary Judgment Standards of Review*

{¶ 21} When a declaratory judgment action is resolved on summary judgment, an appellate court's review of the trial court's resolution of the legal issues is de novo. *Troutman v. Estate of Troutman*, 189 Ohio App.3d 19, 2010-Ohio-3778, 937 N.E.2d 173, ¶ 15 (2d Dist.).   "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.,* 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co., Inc.,* 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980).   On de novo review, the trial court's decision is not granted deference by the reviewing appellate court. *Powell v. Rion,* 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.); *Jackson v. McKinney,* 2d Dist. Montgomery No. 26288, 2015-Ohio-1977, ¶ 11.

{¶ 22}   Civ. R. 56(C) defines the standard to be applied when determining whether a summary judgment should be granted.   Summary judgment is proper when the trial court finds: 1) that there is no genuine issue as to any material fact; 2) that the moving party is entitled to judgment as a matter of law; and 3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in the party's favor.   Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 23}   The initial burden is on the moving party to show that there is no genuine

issue of material fact. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings; it must rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue. *Id.*; *Dotson v. Freight Rite, Inc.,* 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41 (citation omitted).

### *Statutory Exemption of Certain Employees*

{¶ 24} Keeping in mind the very deferential standards applicable to legislative enactments and to equal protection challenges subject to rational basis review, we turn to Riverside's challenge to R.C. 718.01(C)(13).

{¶ 25} As stated above, R.C. 718.01(C)(13) exempts "a person employed within the boundaries of a United States air force base under the jurisdiction of the United States air force that is used for the housing of members of the United States air force and is a center for air force operations, unless the person is subject to taxation because of residence or domicile," from being subject to a municipality's commuter income taxes. The parties do not dispute that, as of now, WPAFB is the only base to which this exemption applies. The parties also do not dispute that while part of WPAFB lies within Riverside, other parts do not.

{¶ 26} The State sets forth four reasons why, in its view, the exemption provided is not only rational, but strongly justified:

1) The legislature could have reasonably determined that, because WPAFB provides "the overwhelming majority of local services to Base employees," including a police force, fire department, utilities, and road maintenance, the

collection of municipal taxes by any municipality in which the Base is located was unnecessary or unwarranted;

2) The legislature could have reasonably determined that internally dividing WPAFB for local tax purposes created unnecessary and cumbersome administrative concerns, because employees working on various parts of the Base would have to be treated differently. The boundaries of Riverside not only bisect the Base itself, but also some of the buildings on the Base, such that determinations of which employees or offices are taxable by Riverside would be difficult;

3) The legislature could have reasonably determined that the tax exemption protects Ohio's valuable relationship with WPAFB, which employs thousands of Ohioans and brings billions of dollars into its economy; and

4) The legislature could have reasonably decided to promote or reward service to the country by providing a tax break to citizens who work at WPAFB.

**{¶ 27}** Riverside asserts that the State does not have a "legitimate" interest in most of these purported justifications, with the exception of the State's relationship with WPAFB. It argues, for example, that the State does not play any role in the provision of municipal services to WPAFB, and that "rewarding" employees and contractors who work for the Air Force by providing a municipal tax exemption does not create any direct benefit (or cost) to the State.

**{¶ 28}** The State presented an affidavit from Mark L. Mays, Chief of Installation Management Division, 88 Civil Engineer Group at WPAFB, in support of its contentions

about the logistical aspects of WPAFB operations. Mays's responsibilities include oversight of the provision of the facilities, utilities, and services at the Base, "environmental concerns," road maintenance, housing management, and emergency services. In addition to addressing these issues, Mays's affidavit identified the municipalities and counties in which WPAFB would lie if it were not "entirely federal jurisdiction" and "treated as a federal enclave," and discussed how the manner in which the Base and its buildings are positioned indicates that "municipalities had no role in the construction of the buildings" and that "the only jurisdictional theory in mind * * * was federal."

{¶ 29} The trial court found that the enactment of R.C. 718.01(C)(13), and the benefit it confers on some employees of WPAFB, did not violate principles of equal protection for several reasons. First, the court rejected Riverside's argument that the classification employed by the statute was arbitrary and capricious; it held that the individuals alleged to have been treated disparately were "not alike in all relevant ways" and that the implementation of different classifications based on work location was permissible under the U.S. and Ohio Constitutions. The trial court also rejected Riverside's argument that the legislative history of the statute failed to support its passage; the court noted that "a legislature is not required to articulate its reasons for enacting a statute, and it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."

{¶ 30} Further, the trial court held that the "taxation limitation" or tax exemption for commuter employees and contractors working at WPAFB "serves vital and valid governmental interests" in the following respects: 1) it recognizes that WPAFB workers

receive municipal services from the Base, not Riverside; 2) it prevents complications that would arise from drawing lines through WPAFB for tax or other purposes; 3) it protects Ohio's relationship with WPAFB, which has significant economic value; and 4) it promotes WPAFB employees' service to the country.

{¶ 31} With respect to the statute's rational relationship to a legitimate interest of the State, the trial court found that there were rational reasons to distinguish between a commuter working on an air force base "under federal jurisdiction in a federal enclave" and other commuters, including other federal employees, not working on an air force base.

{¶ 32} In sum, the trial court concluded that each of the grounds for the statute suggested by the State was rationally related to a legitimate governmental interest, that R.C. 718.01(C)(13) did not violate the Equal Protection Clauses of the United States or Ohio Constitutions, and that no genuine issues of material fact remained to be resolved in this case.

{¶ 33} After conducting our de novo review of the evidence and the law, we agree with the trial court's conclusion that there is no genuine issue as to the constitutionality of the statutory provision that exempts WPAFB employees and contractors from the payment of municipal commuter income taxes. Each of the reasons cited by the State for the enactment of R.C. 718.01(C)(13) is rationally related to a legitimate goal and supports the conclusion that the tax exemption is a reasonable accommodation – practically and/or philosophically -- to WPAFB and its employees. The exemption recognizes and promotes the positive relationship between the State and WPAFB. It eliminates the administrative burden of requiring WPAFB and/or its contractors to monitor

the locations of employees, as well as how much time is spent in various locations, relative to Riverside's boundaries. It also removes the possibility that employees or contractors at WPAFB will find certain job assignments more or less desirable because of the impact of a commuter tax affecting some, but not all, of WPAFB's workplaces and offices. Finally, the exemption provides a benefit to employees and contractors who are serving the country in some capacity, and WPAFB, not the city, provides most of the municipal services for the Base.

{¶ 34} Each of these reasons is rationally related to a legitimate governmental purpose and, collectively and individually, these reasons satisfied the rational-basis analysis test for determining the constitutionality of R.C. 718.01(C)(13). Further, the "high degree of judicial deference" that we must give to legislative enactments encompasses giving great deference to the State's determinations of its own legitimate interests. The fact that the State may not play a direct role in the benefits or justifications cited in support of legislation challenged on equal protection grounds does not preclude a judicial finding that the legislation was rationally related to a legitimate State interest. Moreover, the State need only set forth one rational basis for its legislative action, and Riverside concedes that the State has a legitimate interest in promoting good will with WPAFB.

{¶ 35} The United States and Ohio Supreme Courts have made clear that a party challenging the constitutionality of a legislative enactment bears the burden of proof. Thus, Riverside's argument that the State did not sufficiently justify the legislative action misstates the burden, even in summary judgment proceedings such as this one. The State had "no obligation to produce evidence to sustain the rationality" of the statutory

classification, *Columbia Gas. Transm. Corp*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91, and Riverside's arguments are rooted in improper assumptions that it could require the State to present factual evidence in court justifying the legislature's action. The constitutional question is not whether the State legislature's decision was perfect or even the best possible method of achieving a goal. Riverside failed to negate "every conceivable basis" that might support the conclusion that the statute is rationally related to a legitimate government purpose, *Taxation with Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129, *Columbia Gas Transm, Corp.*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, at ¶ 91, or to create a genuine issue of material fact as to the constitutionality of the statute such that further proceedings were warranted.

{¶ 36} The trial court did not err in concluding that there was no genuine issue of material fact as to the constitutionality of R.C. 718.01(C)(13) which warranted further proceedings and that the State was entitled to judgment as a matter of law.

### *Discovery Issues*

{¶ 37} Riverside's first assignment of error also raises three discovery issues related to its efforts to demonstrate that it was entitled to judgment as a matter of law. Generally, we find that they are rooted, in part, in Riverside's belief that it could require the State to present factual evidence in the trial court justifying the legislature's action or that it could explore and/or challenge the legislative rationale for the commuter income tax exemption through discovery.

{¶ 38} Trial courts have broad discretion in the regulation of discovery, and an appellate court generally reviews discovery orders under an abuse-of-discretion

standard.  *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18; *Trick v. Scherker*, 2d Dist. Montgomery No. 26461, 2015-Ohio-2972, ¶ 8.   A trial court abuses its discretion when it acts arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).   Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues.  *Bd. of Clark Cty. Commrs. v. Newberry,* 2d Dist. Clark No. 2002-CA-15, 2002-Ohio-6087, ¶ 13; *Trick* at ¶ 8.   However, whether the information sought in discovery is confidential and privileged from disclosure is a question of law, which is reviewed on appeal de novo.  *Cruz v. Kettering Health Network*, 2d Dist. Montgomery No. 24465, 2012-Ohio-24, ¶ 22.

*Deposing the State's Representative or Designee*

**{¶ 39}**   Riverside claims that the trial court erred in granting the State's Motion for a Protective Order preventing Riverside from deposing the State through its representative or designee.   Riverside relied on Civ.R. 30(B)(5) as providing a basis for the deposition.   The State argued that Civ.R. 30(B)(5) does not contemplate a deposition involving the State and that, even if such a deposition were appropriate in some circumstances, the topics that Riverside sought to address were "inappropriate."

**{¶ 40}**  Civ.R. 30(B)(5) states:

A party, in the party's notice, may name as the deponent a public or private corporation, a partnership, or an association and designate with reasonable particularity the matters on which examination is requested. The organization so named shall choose one or more of its proper employees, officers, agents, or other persons duly authorized to testify on its behalf.

The persons so designated shall testify as to matters known or available to the organization. * * *

{¶ 41} Riverside's "Notice of Rule 30(B)(5) Deposition of State of Ohio" sought to depose an employee, officer, or agent of the State (chosen by the State) concerning the following: 1) the legitimate State interests to which R.C. 718.01(C)(13) is rationally related; 2) the State interests that R.C. 718.01(C)(13) advances or purports to advance; 3) how the statute advances those interests; 4) the identity of "all bases, installations, or other properties/entities" affected by the statute; 5) "how municipalities are permitted to tax federal employees not working at WPAFB for income they earn within the municipality"; 6) Riverside's boundaries; 7) the process by which the City of Riverside was formed; and 8) the "[f]acts and reasoning that support the State's position that a portion of WPAFB is not located within the City of Riverside."

{¶ 42} The trial court found that the State is not "a public or private corporation, a partnership, or an association" subject to Civ.R. 30(B)(5). It agreed with the reasoning set forth in *Marotto v. The Ohio State University Medical Center*, Ct. of Cl. Case No. 2011-02590, Entry (July 18, 2013), in which the Ohio Court of Claims addressed an identical argument raised by the Ohio State University Medical Center and granted the hospital's motion to strike a Civ.R. 30(B)(5) notice of deposition. The *Marotto* case was considered by the Tenth District three times, but the striking of the notice of deposition was not assigned as an error. *See Marotto v. The Ohio State University Medical Center*, 10th Dist. Franklin No. 12AP-27, 2012-Ohio-1078; *Marotto v. The Ohio State University Medical Center*, 10th Dist. Franklin No. 12AP-27, 2012-Ohio-6158; *Marotto v. The Ohio State University Medical Center*, 2014-Ohio-4549, 21 N.E.3d 643 (10th Dist.).

{¶ 43}   The trial court further found that, even if the State could be subject to such a deposition, the State had already summarized the rational justification(s) for the law that it intended to advance and identified the witnesses and materials on which it intended to rely, such that some of the information sought in the deposition had already been provided.   It further found that the "requested deposition items were not set forth with sufficient particularity and are overly broad and unduly burdensome."

{¶ 44}   The trial court did not abuse its discretion when it granted the State's protective order precluding the deposition.   The trial court correctly observed that much of the subject matter Riverside sought to address in the deposition had already been provided by other means.   Some of the proposed topics related to the State's legal theories, which were apparent from documents in the record.   Other proposed topics related to the rationale for the legislation's enactment, which is a matter unsuited for discovery, especially since the State may rely on any "conceivable basis" in support of the constitutionality of a statute.   *Pickaway Cty. Skilled Gaming*, 127 Ohio St. 3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 20.   Further, as referenced above, it is legally impossible to divine what the legislature considered or its specific bases for legislation.   Under these circumstances, the trial court did not abuse its discretion in granting the State's request for a protective order.

{¶ 45}   Moreover, Civ.R. 56(F) states:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to

permit affidavits to be obtained or discovery to be had or may make such other order as is just.

Pursuant to this Rule, if, in light of the trial court's decision to preclude this particular deposition, Riverside needed additional time to prepare its response to the State's motion for summary judgment, it could have filed a motion stating why it could not, at that time, present sufficient facts justifying its opposition and/or requesting additional time. Riverside did not do so.

*Deposing the State's Attorney*

{¶ 46} Riverside also argues that the trial court improperly quashed its subpoena of Assistant Attorney General Zachery Keller, who represented the State in these proceedings. Riverside contends that it was entitled to depose "the individual who verified the State's interrogatory responses," Keller. Specifically, Riverside argues that Keller was the only person "identified as having knowledge of [the State's] factual assertions," and Keller "made himself into a fact witness" by verifying the State's interrogatory responses. The State had sought to quash the subpoena on the grounds that such a deposition would trigger privilege and work product protections and that the interrogatories inappropriately focused on legal issues.

{¶ 47} The trial court summarily granted the motion to quash. Because the trial court's order prevented the disclosure of alleged privileged or otherwise protected information (rather than requiring such disclosure), the decision, like most other discovery orders, was not immediately appealable. *See McDade v. Morris*, 9th Dist. Summit No. 27454, 2015-Ohio-4670, ¶ 18.

{¶ 48} Riverside's interrogatories contained questions such as: 1) "Identify each

person known or reasonably believed to * * * have knowledge of any of the facts or circumstances regarding the subject matter of Riverside's complaint to the State's Answer"; 2) "State all facts and reasons that support your affirmative defense that 'R.C. 718.01(H)(11) is rationally related to a legitimate state interest' "; 3) "Identify each and every state interest that the State contends [R.C.] 718.01(H)(11) * * * advances or purports to advance"; and 4) For each interest identified in [3)], explain in detail how the State contends Section 718.01(H)(11) advances that state interest."

{¶ 49} Riverside's interrogatories were directed to the State of Ohio, rather than to any particular individual; Assistant Attorney General Keller answered. The trial court could have reasonably concluded that, to the extent that the interrogatories asked for factual information, the State had answered. For example, Riverside requested the identity of persons with "knowledge of any of the facts or circumstances regarding the subject matter of Riverside's complaint"; the State responded (in addition to objecting) that members of the 127th General Assembly, which enacted the tax exemption, "can reasonably be presumed to have at least some knowledge of the facts and circumstances" regarding its passage, and that not-yet-identified persons at WPAFB might also be presumed to have such information.

{¶ 50} With respect to Riverside's interrogatories about the State's legal theories of the case and "affirmative defenses," the interrogatory responses directed Riverside to the State's Motion to Dismiss, its Reply in Support of its Motion to Dismiss, and its appellate brief in the previous appeal. Additionally, the trial court could have reasonably concluded that these interrogatories were improper, insofar as they sought information about legal theories of the case from opposing counsel.

{¶ 51}  The trial court did not abuse its discretion in quashing the subpoena of Keller.

*Motion to Compel Documents*

{¶ 52}  Finally, Riverside claims that the trial court erred in overruling its motion to compel documents, specifically certain communications between attorneys of the Air Force or WPAFB and the State's attorneys handling this case or other cases involving Riverside and WPAFB.  Four or five memoranda[1] and some email exchanges are at issue.

{¶ 53}  The State asserted that these communications were protected by attorney-client privilege and under the common interest doctrine, because they furthered the State's legal analysis and defenses related to this litigation.  The State also asserted that the documents were work product created because of pending litigation.  Riverside argued that there was no attorney-client privilege, common interest privilege, or work product doctrine protection for these documents, or that the State could not assert these defenses on behalf of WPAFB and its attorneys.  Riverside further argued that privilege did not apply because the Ohio Attorney General did not represent WPAFB, and WPAFB waived any privilege that applied to the documents by disclosing them to the Attorney General.

{¶ 54} The State submitted three affidavits in support of its claim of privilege, in accordance with Civ.R. 26(B)(6)(a).  These affidavits were from attorneys representing

---

[1] The trial court's judgment refers to six memoranda in the State's privilege log, and the affidavit of State's attorney Brodi Conover identifies five memoranda.  One memorandum was voluntarily disclosed by the Attorney General's office during the course of these proceedings.

the State or WPAFB and stated that the memoranda and emails at issue in the motion to compel had been exchanged since a summary judgment ruling between the current parties in a previous case; they further stated that the State's correspondence and collaboration with WPAFB was in anticipation of further litigation and for the purpose of discussing defense strategy. Additionally, some of the documents included "general background facts regarding Riverside's efforts to tax Wright Patterson employees," discussion of jurisdictional issues, and analysis of whether certain documents were protected from discovery. Similarly, according to the affidavits, the emails contained background discussions of how the City of Riverside was formed, its boundaries, its authority to tax WPAFB employees, and legal strategy. (We note that the emails and documents in question have not been made part of the record on appeal.)

{¶ 55} After conducting a detailed analysis of the affidavits submitted by the State, the trial court agreed with Riverside that attorney-client privilege did not apply because the State did not represent WPAFB. However, it found that the State's argument that the documents contained work product was "compelling." Citing Civ.R. 26(B)(3) and *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, the court observed that Riverside was required to show good cause to compel the production of documents prepared in anticipation of litigation by another party or its representative. *See* Civ.R. 26(B)(3). The trial court concluded that Riverside had not shown good cause to compel the production of the disputed documents in the State's privilege log, because it had not shown that the information contained in the documents was at issue in the case, was otherwise unavailable, and/or that Riverside's need for the information was compelling. Thus, the court overruled Riverside's motion to compel the production of the

disputed documents.   The court expressly did not rule on the State's asserted "common interest exception."

**{¶ 56}**  The trial court did not abuse its discretion in concluding that Riverside had not shown good cause to compel the production of the documents in question.   Although the court did not rule on the State's assertion that it and WPAFB had a common interest in the litigation, Riverside's assertion that documents prepared by WPAFB "cannot be considered the 'work product' of the State" oversimplifies the issue.   Civ.R. 26(B)(3) mandates that trial preparation materials may be obtained in discovery "only upon a showing of good cause" by the party seeking the documents.   The trial court did not abuse its discretion in concluding that Riverside had failed to satisfy this requirement.

**{¶ 57}** Riverside's first assignment of error is overruled.

### Trial Court's Application of the Summary Judgment Standard

**{¶ 58}**  In its second assignment of error, Riverside claims that the trial court applied the incorrect standard of summary judgment.   Riverside asserts that the trial court erred in that it did not require the State, as the moving party, to meet its initial burden of showing there was no genuine issue of material fact for trial.   It also claims that the trial court erroneously applied the "beyond a reasonable doubt" standard, when the burden shifted to Riverside to show that there was a genuine issue for trial.

**{¶ 59}**  As we discussed above, the initial burden is on the party moving for summary judgment to show that there is no genuine issue of material fact.   *Drescher,* 75 Ohio St.3d 280, 292-93, 662 N.E.2d 264.   Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings; it must rebut the moving party's evidence with specific facts showing the

existence of a genuine triable issue.    *Id.*; *Dotson,* 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41.

{¶ **60**}   The summary judgment standard, with its focus on the "material facts," is arguably somewhat problematic to apply when the issue upon which the court is asked to render summary judgment is, at its core, a legal issue, as is the case here.   The State set forth several rational bases for the legislature's conclusion that the enactment of R.C. 718.01(C)(13) served a legitimate government purpose.   Pursuant to case law of the U.S. and Ohio Supreme Courts, which is also cited above, the State had "no obligation to produce evidence to sustain the rationality of a statutory classification."   *Columbia Gas. Transm. Corp*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91; *Taxation With Representation of Washington*, 461 U.S. 540, 547-548, 103 S.Ct. 1997, 76 L.Ed.2d 129.   Moreover, legislation is presumed to be constitutional.   *Pickaway Cty. Skilled Gaming*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 20.   The trial court did not err in concluding that the State "set forth proof that it had valid state interests in legislating tax exemptions for those who work on a federal air force base, including WPAFB," thus shifting the burden to Riverside to establish that there was a triable issue.

{¶ **61**}   Once the burden shifted, Riverside argued that R.C. 718.01(C)(13) did not treat all similarly situated individuals in a similar manner, i.e., some commuters to Riverside must pay its income tax, and non-WPAFB federal employees are required to pay incomes taxes to municipalities in which they work, while WPAFB federal employees are exempt.   The trial court concluded that Riverside failed to demonstrate that a genuine issue of material fact existed as to 1) whether the various employees referenced by Riverside were "not alike in all relevant ways" for purposes of classification and equal

protection analysis, and 2) whether the legislature's classification for tax purposes was "arbitrary and capricious." It also concluded that there was no genuine issue of material fact that the classification was reasonably related to the State's legitimate interests. These conclusions were legal conclusions, rather than factual ones.

{¶ 62} The trial court concluded that "even construing the evidence in favor of Riverside, the court finds that Riverside has failed to meet its burden of proving that R.C. 718.01(H)(11) violates the Equal Protection Clauses of the United States Constitution and Ohio Constitution beyond a reasonable doubt. As a result, no genuine issues of material fact remain in this case, and the State of Ohio is entitled to judgment as a matter of law." The trial court's use of the phrase "beyond a reasonable doubt" is a central focus of Riverside's argument that the court applied an improper standard.

{¶ 63} Although Riverside correctly points out that the "beyond a reasonable doubt" standard does not generally apply in civil cases, the Ohio Supreme Court has stated that a lawfully enacted statute "will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." *Cleveland v. State,* 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 6. In this context, the trial court did not err in concluding that Riverside had failed to rebut the State's motion that it was entitled to judgment as a matter of law because there was no genuine issue of material fact that Riverside could not establish the unconstitutionality of R.C. 718.01(C)(13) "beyond a reasonable doubt"; its use of this language did not reflect an improper analysis of the issues presented. Having conducted a de novo review of the issues presented, we agree with the trial court's conclusion that the State was entitled to judgment as a matter of law.

{¶ 64} The second assignment of error is overruled.

{¶ 65} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Daniel J. Buckley
Adam C. Sherman
Jacob D. Mahle
Jessica K. Baverman
Zachery Keller
Nicole M. Koppitch
Brodi J. Conover
Hon. Mary Katherine Huffman